STATE of Tennessee, Appellee,

v.

Gloria J. DOWDY, Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

Oct. 12, 1994.

William D. Massey, Joseph S. Ozment, Memphis, for appellant.

Charles W. Burson, Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, John W. Pierotti, Dist. Atty. Gen., Thomas Henderson, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

HAYES, Judge.

The appellant, Gloria Dowdy, pled guilty to one count of sale of cocaine under a plea agreement and received a three year sentence. At the conclusion of the sentencing hearing the trial court conducted a hearing to determine probation eligibility as part of its sentencing determination. The trial court ordered the appellant confined for six months followed by thirty-six months of probation. The appellant appeals from a denial of full probation.

The judgment of the trial court is affirmed.

On January 26, 1993, appellant entered a plea of guilty to sale of cocaine, a Class C felony. The parties stipulated that the facts would have shown that the appellant sold a quarter rock of crack cocaine to an undercover Memphis police officer for fifteen dollars. Also involved was a co-defendant by the name of Beecher who took the undercover police officer to the residence of the appellant where the drug transaction occurred.[1]

The appellant was then sentenced to three years pursuant to the plea agreement with a hearing for probation consideration which immediately followed her guilty plea.

Proof was introduced by both the State and appellant over a period of three separate hearing dates. At the initial hearing the

---

1. The record indicates the co-defendant, an eighteen year old male, entered a guilty plea to facilitation and received a sentence of 2 years with no probation.

proof established that the appellant was thirty-six years of age, a single parent with one child, unemployed and with no criminal history. Appellant also related that she lived in a house with eight other people including her mother and son. The appellant's statement in the pre-sentence report basically denied criminal involvement and indicated that the drugs and money belonged to the co-defendant Beecher and that "he brought the narcotics in on [her]." The presentence report also stated that the appellant was in good health, was a high school drop-out and did not use alcohol or drugs. Appellant, during the hearing, testified that she drank one quart of beer a day and had been doing so for some time.

The police report read to the court during these hearings indicated that the undercover officer initially made contact on the street with the co-defendant Beecher for a drug buy. Beecher then directed them to the appellant's residence stating, "Gloria has some nice rocks." Once inside the residence of the appellant, the appellant sold a quarter rock of cocaine to the undercover officer. Immediately upon delivery of the cocaine, an arrest was made. According to the police report, the appellant was apprehended in the bathroom, where she appeared to be "flushing something." The marked fifteen dollars was not recovered by the police.

During testimony at the first hearing appellant gave several inconsistent statements concerning her involvement in the drug sale. Appellant appeared to state that the cocaine was not hers and she had no idea why Beecher was directing people on the street to her house for the purchase of crack cocaine. At this point the trial court suspended further proceedings until February 22, advising the appellant to "get her act together."

At the second hearing held on February 22, 1993, the appellant resumed her testimony. At this hearing, appellant testified that she got the "crack from a person she only knew as Tom and she hadn't seen him since." When questioned about the role model she was setting for her son, appellant testified that her son did not use drugs or sell drugs and was a good nineteen year old who was expecting to graduate from high school.

Again the trial court questioned the appellant concerning what appeared to be inconsistencies between appellant's testimony and the police report. At the conclusion of this hearing the trial court advised that suspension of sentence would be taken under advisement until March 22, 1993. The trial court then directed appellant to talk to a Lt. Alvin Moore in order that she might "become part of the solution instead of part of the problem." Lt. Moore was a narcotics officer with the Shelby County Sheriff's department.

At the March 22, 1993 hearing the trial court advised the appellant that Lt. Moore had submitted a written report indicating that the appellant had refused to cooperate. The trial court then advised appellant it was ready to rule on the issue of probation when counsel for appellant requested additional time for his client to discuss cooperation with Lt. Moore. The trial court approved this request and the hearing was continued.

The next court appearance was May 20, 1993. The trial court advised appellant that it had been informed that appellant had refused to cooperate with Lt. Moore once again. The trial court reiterated its concern that the appellant was running a crackhouse that would have a detrimental impact upon her son. At this point the court was advised by the State that appellant's son was currently serving a sentence in the county correctional center for a drug conviction. Information related by the State indicated appellant's son had been on probation for some time and had been revoked on a second drug sale since the last hearing date.

Lt. Moore was called by the State to testify as to appellant's lack of willingness to work with the narcotics unit. Upon cross-examination an issue developed as to the exact nature of the cooperation which would be requested of the appellant. Lt. Moore testified as follows:

Q. And the kind of work she would be doing would be to make sales?

A. No.

Q. To make—She wouldn't be making sales for Shelby County Narcotics?

A. To assist—No, she would not make any sales. We would attempt to make

buys from prospected (sic) drug dealers with her assistance.

Q. Okay. So she would go up and she'd make a buy for you?

A. No, not necessarily?

Q. But that's a possibility?

A. There is a possibility, but nine times out of ten we'll have undercover officers to make the buys.

Q. And she just sets up the buy?

A. She would make the contact. She would inform us on who would be the suspected drug dealer and where we could find them.

The trial court found that over the course of these proceedings the appellant had lied repeatedly to the court and that she was unrepentant. The trial court restated its concern that, as a mother, appellant had abandoned parental responsibilities toward her son who was now serving time for the same type of offense.

The trial court ordered the appellant serve a period of six months confinement in the county correctional center followed by three years of probation. Further, the trial court ordered as conditions of probation: (1) appropriate curfews; (2) vocational training; (3) completion of G.E.D.; (4) employment; (5) drug abuse evaluation and treatment if needed; (6) community service; and (7) court counseling. The court entered the following facts as its basis for determining the appropriate period of confinement and review of sentencing alternatives:

The Court is granting probation but thinks some incarceration is appropriate. One, for lack of candor. Two, for the deterrent effect of this to the individual. Three, for the specific message this may send under the facts of this case.

**2.** The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

**3.** In each case that the appellant cites as authority, the defendant was sentenced to straight con-

I

The appellant contends that she was entitled to probation for the full term of her sentence. Appellate review of the manner of service of the sentence is de novo, with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn.Code Ann. § 40–35–401(d).[2] The review requires consideration of the evidence received at the trial and sentencing hearing, argument of counsel, the nature and characteristics of the offenses, existing mitigating and enhancing factors, statements made by the offender, and the potential for rehabilitation. *State v. Ashby,* 823 S.W.2d 166, 168 (Tenn.1991).

A

Appellant correctly points out that she is presumed to be a favorable candidate for alternative sentencing under Tenn.Code Ann. § 40–35–102(6) because she is a Class C offender with no prior criminal record. However, the trial court did in fact impose one of the alternative sentencing options under Tenn.Code Ann. § 40–35–104. The trial court sentenced the offender to a term of "split confinement," which is defined by Tenn.Code Ann. § 40–35–306.

It is for this reason that the principal cases upon which the appellant relies are not applicable here. In *State v. Ashby,* 823 S.W.2d 166 (Tenn.1991), the defendant was sentenced to incarceration in the penitentiary, with no probation. *Id.,* at 167. Also in *State v. Leone,* No. 02C01–9206–CR–00148, 1993 WL 379204 (Tenn.Crim.App. Jackson, September 29, 1993), the trial court denied alternative sentencing and ordered confinement. *Id.,* p. 2. Since the trial court granted alternative sentencing here, those cases are unpersuasive.[3]

However, under *de novo* review, the sentence must be examined under the principles of *Ashby* with a presumption of correctness.

finement, with no probation. *See Stiller v. State,* 516 S.W.2d 617, 620 (Tenn.1974); *State v. Hartley,* 818 S.W.2d 370 (Tenn.Crim.App.1991); *State v. Fletcher,* 805 S.W.2d 785 (Tenn.Crim.App. 1991); *Mattino v. State,* 539 S.W.2d 824 (Tenn. Crim.App.1976).

The trial court found deterrence to be an appropriate sentencing consideration in this case. Before a trial court may deny probation on the ground of deterrence, there must be some evidence in the record "that the sentence imposed will have a deterrent effect within the jurisdiction." *State v. Jenkins*, 733 S.W.2d 528 (Tenn.Crim.App.1987); *State v. Horne*, 612 S.W.2d 186, 187 (Tenn. Crim.App.1980).

Appellant argues no evidence was introduced to establish a deterrent effect upon others beyond the normal deterrence inherent in any criminal offense. We agree that the record contains no proof on this issue.[4]

The trial court also announced its sentencing decision was in part founded upon lack of appellant's candor. We have held previously that untruthfulness of a defendant can be the basis for a denial of probation. *State v. Jenkins*, 733 S.W.2d 528, 534–536 (Tenn. Crim.App.1987); *cf. Leone*, slip op. at 3–5. This court has also upheld the denial of judicial diversion on the basis of untruthfulness. *See State v. Anderson*, 857 S.W.2d 571 (Tenn.Crim.App.1992).

In this case, the issue to be decided is whether the trial court erred in denying full probation solely on the grounds of the untruthfulness of the appellant.

Our sentencing considerations provide that the sentence imposed should fit the offense committed.[5] However, it could be equally stated that the punishment should fit the offender as well. Indeed, individualized punishment is the essence of alternative sentencing. In discussing alternative sentencing, the ABA Standards, as well as the Model Penal Code, upon which the Tennessee Sentencing Reform Act of 1989 is predicated state:

> Attention should be directed to the development of a range of sentencing alternatives which provide an intermediate sanction between supervised probation on the one hand and commitment to a total custody institution on the other and which *permit the development of an individualized treatment program for each offender.*

ABA Project on Standards for Criminal Justice, Sentencing Alternatives and Procedures § 2.4, p. 15 (App.Draft 1968) (emphasis added).

Our Sentencing Act reflects the individualized nature of alternative sentencing. When imposing a sentence of total confinement, the trial court should base its decision on the considerations listed in Tenn.Code Ann. § 40–35–103(1):

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

However, when, as in this case, the trial court has determined that total confinement is not proper, and is choosing a sentencing alternative, Tenn.Code Ann. § 40–35–103(5) becomes a relevant factor for consideration in the sentencing decision:

> (5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence.

It is apparent that our Sentencing Act has framed the basis of individualized alternative sentencing determinations on the potential for rehabilitation of the defendant. In this

---

4. Our Sentencing Act requires that any sentence imposed by a court must be based upon evidence contained in the record of the trial, sentencing hearing or the pre-sentence report. Tenn.Code Ann. § 40–35–210(d) (1993).

We note that the trial court discussed at length problems in the African–American community within Shelby County. However, we conclude that the trial court's statements may not be considered as "judicially noticed" facts supporting deterrence under Tenn.R.Evid. 201(B).

5. Tenn.Code Ann. § 40–35–103(2) (1993).

context, the untruthfulness of the defendant becomes an important consideration for the trial court.

It has been widely held that the defendant's truthfulness while testifying on his own behalf is probative of his attitudes toward society and prospects for rehabilitation and is thus a relevant factor in the sentencing process. *See, e.g. U.S. v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *State v. Bunch,* 646 S.W.2d 158, 160 (Tenn.1983). We have held that a defendant's credibility and willingness to accept responsibility for the offense are circumstances relevant to determining his rehabilitation potential. *State v. Anderson,* 857 S.W.2d 571, 574 (Tenn.Crim. App.1992). It is unrealistic to assume that someone who has just pled guilty to a felony conviction, who then offers perjured testimony to the court, denies any criminal wrongdoing for the offense for which they have just pled, and is in general unrepentant is someone who could immediately return to their community and be expected to assume a role as a functioning, productive and responsible member of society.

■ In considering false testimony of a defendant in the sentencing process, the trial court is therefore exercising its traditional discretion by evaluating the defendant's personality and prospects for rehabilitation. *See Williams,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). It is through this evaluation that the trial court, pursuant to Tenn.Code Ann. § 40–35–103(5), can determine the appropriate alternative sentence for each defendant.

We conclude that consideration by the trial court of the appellant's candor while testifying was probative of her prospects for rehabilitation and thus was a relevant factor in determining the appropriate sentencing alternative.

The appellant has failed to establish that the decision of the trial court in denying probation of the entire sentence was erroneous.

**B**

■ The appellant argues that the trial court based its sentencing decision on the fact that the appellant refused to cooperate with the narcotics division of the Memphis Police Department. After reviewing the record, we conclude that the trial court's sentencing considerations in reaching its decision was not based upon appellant's refusal to cooperate but upon those factors announced in its findings.

However, we conclude that the trial court was without authority to require the appellant to participate in undercover police activities. The record is unclear as to the exact nature and extent of her required role. It is clear, however, that she would be involved in making contacts with suspected drug dealers.

The Sentencing Act encourages effective rehabilitation through use of alternative sentencing that elicits voluntary cooperation of the defendant. Tenn.Code Ann. § 40–35–102(3)(c) (1993). Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation and or community service. Tenn.Code Ann. § 40–35–103(6) (1993). Additionally, conditions of probation which may be imposed, although not all inclusive, are set forth in Tenn.Code Ann. § 40–35–303(d)(1–9).

We conclude that requiring the appellant to participate in undercover activities under the facts as presented was outside the scope of the Sentencing Act as it was clearly not voluntary, was not reasonably related to any form of rehabilitation and was unduly restrictive of appellant's liberty.

**II**

■ The appellant also contends that the trial court committed error in refusing to impose a sentence pursuant to Tenn.Code Ann. § 40–35–313, commonly referred to as "judicial diversion." The granting of judicial diversion is within the discretion of the trial court and a refusal to grant judicial diversion shall not be disturbed on appeal if any substantial evidence to support the refusal exists in the record. *State v. Bonestel,* 871 S.W.2d 163, 167 (Tenn.Crim.App.1993).

Here the trial court observed the defendant's statements, attitude and demeanor, and found that she was dishonest and unrepentant. This basis alone is sufficient to give the trial court the benefit of discretion. *See State v. Anderson*, 857 S.W.2d 571 (Tenn. Crim.App.1992); *State v. Leone*, No. 02C01–9206–CR–00148, slip op. at 3, 1993 WL 379204 (Tenn.Crim.App. September 29, 1993).

The sentence imposed by the trial court is, therefore, affirmed.

WHITE, J., and JOHN H. GASAWAY, Special Judge, concur.