# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### OCTOBER 1996 SESSION



**FILED**

**February 24, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **NO. 03C01-9604-CC-00148** |
| Appellee, | ) | |
| | ) | **HAMBLEN COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JAMES E. BECKNER,** |
| **DARRELL KENNETH McCONNELL,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Denial of Alternative Sentencing) |

**FOR THE APPELLANT:**

**PAUL G. WHETSTONE**
502 N. Jackson Street
Morristown, TN 37814-3915

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**TIMOTHY F. BEHAN**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**C. BERKELEY BELL, JR.**
District Attorney General

**JOHN F. DUGGER, JR.**
Assistant District Attorney General
Hamblen County Justice Ctr.
510 Allison Street
Morristown, TN 37814

**OPINION FILED:** _____

**AFFIRMED**

**JERRY L. SMITH,**
**JUDGE**

# O P I N I O N

The defendant, Darrell Kenneth McConnell, pled guilty in the Hamblen County Circuit Court to one (1) count of Class D criminal simulation and six (6) counts of Class E criminal simulation. The trial court denied alternative sentencing and imposed concurrent sentences of two (2) years and one (1) day for the Class D felony and one (1) year for each of the Class E felonies. On appeal, defendant challenges the trial court's denial of alternative sentencing. We affirm the judgment of the trial court.

## FACTS

The facts giving rise to the guilty pleas were stated by the assistant district attorney general as follows:

> Your Honor, the proof would show in case number 94-CR-305 that on September the 29th, 1994, at approximately 8:10 p.m. that Officer Mark Campbell of the Morristown Police Department was dispatched to the College Square Mall to the store Afterthoughts. The proof would be that he talked to the store manager, Ms. Jamie Wyatt, and she stated she had received a counterfeit one hundred dollar bill, and she noticed the man was still in the mall and pointed him out to the officer.

> The proof would be that Officer Campbell approached Mr. McConnell and asked him if he had made a purchase there, and he confirmed that he had, and asked him if he had change and also other money on him. He produced a wallet with various denominations of bills. Proof would be that he had other money, U.S. Currency, in his front pocket. Upon checking the wallet, he had six hundred and thirty dollars of counterfeit bills in that wallet, and he had good currency in his front pocket.

> The proof would further show that a search of his car showed he had six thousand four hundred and thirty dollars in counterfeit bills in his vehicle.

> And that checking with other stores, he had passed a hundred dollar bill to Sears for a purchase price of thirty-four dollars and ninety-nine cents, and that bill was counterfeit; a twenty dollar bill to Radio Shack, and the purchase price that he bought there was two dollars and ninety-nine cents. He received change.

> He passed another one hundred dollar bill to G.N.C. for purchasing items of twelve dollars and seventy-four cents, and received change.

2

He passed another one hundred dollar counterfeit bill to the Footlocker for purchase of items of thirty-nine dollars and ninety cents, and he received change for that.

He passed another one hundred dollar counterfeit bill to Afterthoughts, purchasing nineteen dollars and fifty-three cents.

All those bills were counterfeit bills.

And the proof would further show that he had scrubbers in his wallet that are used on counterfeit money to rub up the paper to make it feel like real money instead of just being slick. He had scrubbers in his wallet.

And he also had a pen that is used to check counterfeit bills, to mark it, and it makes a certain color whether it's counterfeit or not; he had that on his person.

Your Honor, that would be the proof in these cases, and they occurred in Hamblen County, Tennessee.

To these facts the defendant entered an Alford plea and agreed the plea was in his best interest.[1] The defendant refused to acknowledge guilt and stated the scrubbers were only used to clean contacts. Although the parties agreed to concurrent sentences of two (2) years and one (1) day for the Class D felony and one (1) year for each of the Class E felonies, the issue of alternative sentencing was submitted to the trial court for determination.

## SENTENCING HEARING

At the sentencing hearing the defense presented a character witness, a landlord who leased commercial property to the defendant and the defendant's wife of twenty-eight (28) years. All testified as to the defendant's positive attributes. The testimony also revealed that the defendant suffered from a heart condition. It was further established that the defendant, while on bond for the subject charges, was arrested in the State of Virginia for passing a counterfeit bill for which defendant was expected to receive a suspended sentence. The defendant's wife acknowledged the presence of a color copy machine in their residence, although she stated it was to be used for screen printing t-shirts. The defendant did not

---

[1] In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 747 (1970); the United States Supreme court held that a criminal defendant may enter a guilty plea without admitting guilt if the defendnt intelligently concludes his best interests would be served by a plea of guilty.

testify except in the submission of his guilty plea. The defendant's version of the counterfeiting scheme remained a mystery.

The trial court specifically found that the defendant had been untruthful and had failed to acknowledge his personal responsibility for the extensive counterfeiting scheme. The court further noted the passing of another counterfeit bill while the defendant was on bond for the present offenses. Although the trial court noted the poor health of the defendant, the trial court observed that he could be placed in a special facility in the Department of Correction. The trial court denied alternative sentencing.

**STANDARD OF REVIEW**

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); *see also*

4

<u>State v. Ashby</u>, 823 S.W.2d at 169.

A court may also consider the mitigating and enhancing factors set forth in Tenn. Code Ann. §§ 40-35-113 and 114 as they are relevant to the § 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); <u>State v. Boston</u>, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); <u>State v. Boston</u>, 938 S.W.2d at 438.

## CONCLUSION

The trial court's finding that the defendant had been untruthful and failed to acknowledge personal responsibility for his criminal conduct is significant as it relates to the potential for rehabilitation. *See* <u>State v. Zeolia</u>, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); <u>State v. Dowdy</u>, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). The passing of another counterfeit bill while the defendant was on bond is also indicative of the lack of potential for rehabilitation. It is also apparent that confinement is necessary to depreciate the seriousness of these counterfeiting offenses. We find no error in the denial of alternative sentencing.

The judgment of the trial court is AFFIRMED**.**

_____
**JERRY L. SMITH, JUDGE**

**CONCUR:**

_____
**GARY R. WADE, JUDGE**

5

_____

**DAVID H. WELLES, JUDGE**