IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

OCTOBER 1997 SESSION

FILED

April 23, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9612-CC-00520 |
| | ) | |
| Appellee | ) | |
| | ) | WILLIAMSON COUNTY |
| V. | ) | |
| | ) | HON. DONALD P. HARRIS, |
| TRACIE JENKINS and | ) | JUDGE |
| DAVID RAGSDALE | ) | |
| | ) | |
| Appellants. | ) | (Sentencing) |
| | ) | |
| | ) | |

For the Appellants:

Lee Ofman
317 Main Street
Suite 208
Franklin, TN 37064
(For appellant Jenkins)


John S. Colley, III
Colley & Colley
P.O. Box 1476
Columbia, TN 38402
(For appellant Ragsdale)

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Ellen H. Pollack
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493


Joseph D. Baugh, Jr.
District Attorney General
Williamson County Courthouse
P.O. Box 937
Franklin, TN 37065


OPINION FILED: _____


AFFIRMED


William M. Barker, Judge

**OPINION**

The appellants, Tracie Jenkins and David Ragsdale,[1] appeal as of right the sentences they received in the Williamson County Circuit Court upon their pleas of guilty to the offense of voluntary manslaughter. Appellants each received five-year sentences in the Department of Correction. However, the trial court ordered split confinement by requiring that appellants serve one year in the Williamson County Workhouse and then be placed on intensive probation for six years.

On appeal, appellants argue that they should have been granted full probation. Appellant Jenkins also contends that the trial court did not properly consider weekend service of the incarceration period in her case. Additionally, she argues that the State violated an agreement to not contest probation at the sentencing hearing. We affirm the trial court.

On the evening of October 23, 1995, the appellants, along with co-defendant Scotty Dickerson, were involved in a vehicle chase with Anthony Anglin in Spring Hill. Anglin had assaulted a mutual friend of the appellants and Dickerson one month earlier and the chase was apparently in retaliation. Appellant Ragsdale was driving Jenkins' Toyota pickup truck and Anglin was also driving a small pickup truck. Anglin's girlfriend, Stacey Grissom, and her sister Shannon were passengers in the Anglin vehicle. The chase occurred on Highway 31 in Williamson County with the vehicles passing one another and the occupants of the vehicles making obscene gestures at one another. Speeds ranged from sixty (60) miles per hour to one hundred (100) miles per hour.

Ragsdale's hunting rifle was in the back of Jenkins' truck. He had placed it there earlier that evening when the threesome drove to a field looking for deer. At some point during the chase, Jenkins suggested that they shoot at the tires or tailgate

---

[1]These cases were consolidated for appeal by order of this Court on February 27, 1997.

on Anglin's truck to scare them or "to slow them down."[2]  Jenkins reached through the sliding-glass window of the truck and obtained the hunting rifle from the truck bed. She removed the gun from its case and handed it to Dickerson.  Dickerson leaned out the truck window on the passenger's side and fired two shots.[3]  After the shots were fired, Ragsdale slowed down, but they continued to follow the Anglin truck.  Ragsdale soon noticed that the hazard lights on Anglin's truck were flashing.  He observed Anglin drive toward the local hospital.  Ragsdale then drove by the hospital and saw Anglin's truck at the emergency room.  Although suspecting that someone may have been injured, the threesome drove away from the hospital and went home.

The two shots Dickerson fired from the rifle struck Stacey Grissom, Anglin's girlfriend, and killed her.  Her death was caused by one bullet in the lower back and one bullet in the back of the head.  Appellants and Dickerson were arrested only hours after the incident and gave statements to the authorities.  Subsequently, they were indicted for the first degree premeditated murder of Stacey Grissom.[4]

The trial was slated to begin on July 22, 1996.  After two days of voir dire, a jury was empaneled.  On the morning of the third day, appellants entered into a plea agreement with the district attorney to the lesser offense of voluntary manslaughter, which was accepted by the trial court.  The negotiated plea contained no agreement on the sentences.  At a subsequent sentencing hearing, the trial court ordered five years in the Department of Correction.  The sentence was suspended, however, and appellants were granted the alternative of split confinement.  Appellants were ordered

---

[2]In the statements given to authorities, it is unclear who suggested shooting the tires or tailgate. Similarly, the testimony from the appellants and Dickerson at the sentencing hearing conflicted on that issue.  However, when the appellants were sentenced, the trial judge stated that he was satisfied that Jenkins made the suggestion.

[3]Dickerson testified at the sentencing hearing that he fired one shot "up in the air" and one shot "down at the ground."

[4]Ragsdale and Dickerson were also charged with felony reckless endangerment for an incident occurring earlier that evening.  A part of the plea agreement reduced that charge to misdemeanor reckless endangerment to be tried before a jury.  The disposition of that charge is not relevant to this appeal.

to serve one year in the county workhouse and then placed on intensive probation for six years.

When a defendant challenges his or her sentence, we must conduct a *de novo* review of the record. Tenn. Code Ann. §40-35-401(d) (1990). The sentence imposed by the trial court is accompanied by a presumption of correctness and the appealing party carries the burden of showing that the sentence is improper. Tenn. Code Ann. §40-35-401 Sentencing Commission Comments. The presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because of the rationale used by the trial court in determining the manner of service of these sentences, we are unable to afford the trial court's judgment the presumption of correctness.

Appellants were convicted of a Class C felony and, thus, presumed favorable candidates for alternative sentencing, absent evidence to the contrary. Tenn. Code Ann. §40-35-102(6) (Supp. 1995). Accordingly, the trial court suspended the Department of Correction sentence and placed appellants on intensive probation for six years. Nevertheless, the trial court believed some period of incarceration was necessary to avoid depreciating the seriousness of the offense. See Tenn. Code Ann. §40-35-103(1)(B) (1990). Weighing that factor against the appellants' potential for rehabilitation and the least severe measure necessary, the trial court ordered incarceration in the county workhouse for a period of one year. Tenn. Code Ann. §40-35-103(4), (5) (1990). Appellants' resulting sentence was one of split confinement, a proper sentencing alternative. Tenn. Code Ann. §40-35-306(a) (1990); Tenn. Code Ann. §40-35-104(c)(4) (Supp. 1995); State v. Dowdy, 894 S.W.2d 301, 304 (Tenn. Crim. App. 1994).

Tennessee Code Annotated section 40-35-306(a) provides that:

A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the

4

> local jail or workhouse, with probation for a period of time up to and including the statutory maximum time for the class of the conviction offense.

The statute expressly permits the one-year workhouse sentence. Moreover, the six-year probationary period does not exceed the fifteen year maximum sentence for the class of the offense. See Tenn. Code Ann. §40-35-111(b)(3) (1990). In addition, considering the trial court's comments about the appellants' potential for rehabilitation and the least severe measure, the alternative sentence chosen by the trial court was tailored specifically for the appellants considering the applicable sentencing principles. See Dowdy, 894 S.W.2d at 305 (stating that individualized punishment is the essence of alternative sentencing).

Although the trial court properly considered relevant sentencing principles, it incorrectly considered the amount of time the appellants would serve if they were placed in the Department of Correction. Considering the thirty percent release eligibility date, combined with good time credits, and the likelihood that appellants would be paroled upon their first opportunity, the trial court believed appellants could serve less than one year in the Department of Correction. As a result, it ordered a sentence of split confinement to ensure the incarceration period and retain jurisdiction of the appellants. Employing such a rationale is not permitted by statute.

A portion of the Sentencing Reform Act of 1989, codified at Tennessee Code Annotated section 40-35-210, established a number of specific procedures to be followed in sentencing. That section mandates the court's consideration of the following when determining a sentence:

> (1) The evidence, if any received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

Another provision requires trial courts to base sentences upon "evidence in the record of the trial, the sentencing hearing, the presentence report, and, the record of prior

5

felony convictions filed by the district attorney general with the court as required by §40-35-202(a)." Tenn. Code Ann. §40-35-210(g) (Supp. 1995).

Neither the release eligibility date nor good time credits are listed as matters which may be considered in arriving at a sentence.[5] Nevertheless, our *de novo* review of the record leads us to affirm the judgment of the trial court. The trial court did correctly articulate relevant sentencing considerations, such as the appellants' potential for rehabilitation and avoiding depreciation of a serious offense, in determining that a period of incarceration was warranted. Those findings are supported by the record.

We do not agree with appellants' assertion that the trial court erred in denying them full probation based on the nature of the offense. We recognize that the circumstances of the offense must be especially violent, shocking, reprehensible, offensive, or of an exaggerated degree to overcome the presumption of alternative sentencing and require total confinement based solely on the seriousness of the offense. State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995) (citations omitted). The trial court did not make such a finding here and appellants were correctly accorded the presumption of alternative sentencing. However, the facts and circumstances which surrounded the criminal act were of a sufficient degree to warrant a denial of full probation. Id. at 456. Just as this Court said in Bingham, "[a]lthough we have determined that the circumstances of the offense are not egregious enough by themselves to overcome the presumption of alternative sentencing, we conclude that they are sufficiently reprehensible to deny full probation." Id.

---

[5]Service of the percentage required for release eligibility is merely the earliest possible parole date; there is no guarantee a defendant will be paroled on that date. Tenn. Code Ann. §40-35-501(k) (Supp. 1995); Tenn. Code Ann. §40-35-503(b) (Supp. 1995). Furthermore, the accumulation of good time credits is wholly dependent on the individual's behavior while incarcerated. Therefore, premising a sentence on the potential for parole and good time credits not only contravenes the statute, it is also speculative.

The appellants should have recognized the dangerous and reckless nature of their actions. Had they only considered the consequences of their "insane act," the senseless death of a young mother would not have occurred. Their lack of concern and utter disregard for the victim in this case, as evidenced by their flight from the hospital while aware that they had injured someone, militates against probation. Instead of taking responsibility for their actions by reporting the incident, appellants simply went home and went to sleep. Their conduct in that respect is offensive, shocking, and reprehensible. We conclude, as the trial court did, that the circumstances justify a term of incarceration and split confinement was a proper alternative. Appellants have not shown that they were entitled to full probation.

Appellant Jenkins contends the trial court did not properly consider whether she should be permitted to serve her sentence on weekends. In that respect, appellant believes it especially relevant that she is now a mother.[6]

The trial court has jurisdiction over the manner of service of a sentence. Tenn. Code Ann. §40-35-212(a) (1990). When placing a defendant on probation, the statutes permit the trial court to order a period of continuous confinement or periodic confinement. Tenn. Code Ann. §§40-35-306 - 307 (1990). The latter statutory provision states that a defendant may be allowed to serve the incarceration period on weekends. Tenn. Code Ann. §40-35-307(c) (1990).

A trial court ordering probation is vested with a great deal of discretion in the conditions placed on the probationer. Tenn. Code Ann. §40-35-303 Sentencing Commission Comments. As a result, whether a probationer is required to serve some incarceration period either continuously or periodically is within the trial court's discretion. We believe the legislature intended to permit trial courts to choose between these options depending on circumstances as they exist in each case. While

---

[6]Jenkins became pregnant shortly after the shooting and her child was five weeks old at the time of sentencing. Appellant Ragsdale is the father of the child.

Jenkins' new motherhood is a persuasive factor, the trial court clearly felt that continuous incarceration was necessary. We cannot say that is unreasonable or excessive.

In the final issue on appeal, Jenkins contends that the district attorney failed to comply with the terms of the plea bargain agreement. She argues that as part of the plea bargain agreement, the district attorney agreed not to oppose probation. The district attorney advised the trial court that he had no recollection of such a provision. The written plea agreement does not contain such an agreement. Without making a factual finding regarding the existence of an agreement not to oppose probation, the trial court stated that its judgment regarding Jenkins' sentence was based entirely on the evidence and the law and not any position taken by the district attorney. Therefore, no prejudice was suffered by this appellant even if the district attorney did breach the agreement. This issue is without merit.

Our *de novo* review of the sentences imposed in this case reflects that they are proper and in accordance with the sentencing act. While partially supported by improper considerations, relevant sentencing principles warrant the manner of service. We affirm the judgment of the trial court.

_____
William M. Barker, Judge


_____
Joe B. Jones, Presiding Judge


_____
Joe G. Riley, Judge