IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 19, 2003

## STATE OF TENNESSEE v. BARBARA SUE MOORE, ALIAS BARBARA S. MOORE, ALIAS BARBARA ADAMS

**Appeal from the Criminal Court for Davidson County**
**No. 98-B-985     Cheryl Blackburn, Judge**

---

**No. M2002-02995-CCA-R3-CD - Filed September 17, 2003**

---

The defendant, Barbara Sue Moore, pled guilty in the Davidson County Criminal Court to theft of property valued $60,000 or more, a Class B felony, and theft of property valued $1,000 or more but less than $10,000, a Class D felony.  Pursuant to the plea agreement, the defendant received concurrent sentences of eight and two years, respectively, with the manner of service to be determined by the trial court.  After a sentencing hearing, the trial court denied the defendant's request for alternative sentences and ordered that she serve her sentences in the Department of Correction.  The defendant appeals, claiming that the trial court erred by ordering that she serve her sentences in confinement.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Ross E. Alderman, District Public Defender; Jeffrey A. DeVasher (on appeal) and Amy D. Harwell (at trial), Assistant District Public Defenders, for the appellant, Barbara Sue Moore, alias Barbara S. Moore, alias Barbara Adams.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's forging checks from three businesses.  At the defendant's guilty plea hearing, the state presented the following factual account of the crimes: From January 1995 to February 1997, the defendant worked for several businesses owned by Ross Wood and his sons. The defendant had control over the businesses' checks and began writing checks to herself and cashing them.  She then would record in the businesses' ledgers that the checks had been written to

vendors and suppliers. By the time Mr. Wood and his sons discovered the forgeries, the defendant had taken more than $60,000.

At the sentencing hearing, Ross Wood testified that he owned Ross Wood and Sons Plumbing Company and that he hired the defendant in 1995 or 1996 as an office manager. He said that the defendant was responsible for the company's bookkeeping, banking, and billing and that she worked for him for two and one-half to three and one-half years. He said she also worked for his sons Mark Wood, who owned Green Hills Plumbing and Leak Masters, and Eric Wood, who owned Wood Motors. He said that while the defendant was out of town, he looked at his company's checkbook and noticed that checks were missing. He said that he hired a private investigator and that when the defendant returned to work, he told her an investigation was underway. He said she left his business and never returned.

Mr. Wood testified that the investigation revealed the defendant had written checks to her boyfriend and herself and that she had taken $220,000 from his business. He said he never looked at his company's bank statements and did not do his job by checking on the defendant's work. He said that he told his sons about the theft and that they began investigating their businesses' finances. He said he contacted the police and tried to find the defendant but could not locate her. He said that he did not want restitution but that the defendant should have to serve her sentences in jail. He said that the theft nearly caused his business to close and that he kept it open with his personal money.

On cross-examination, Mr. Wood testified that he was not asking for restitution because he did not think the defendant had the money and because he wanted her to go to jail. He said that he and the defendant had a romantic relationship but that the relationship did not begin until she had been embezzling from him for two years. He said that he never gave her any gifts or money and that he did not allow her to steal from his company. He said that he did not tell his sons about his relationship with the defendant but that he did not try to hide it. He said that he and the defendant were both single but that she had a boyfriend.

Mark Wood testified that he owned Green Hills Plumbing and Leak Masters and that the defendant worked for his company by writing company checks and paying bills. He said that she was not allowed to sign checks and that she was supposed to give them to him to sign. He said that his office was located in the same office as Ross Wood and Sons Plumbing Company and that after his father discovered the defendant had been embezzling from Ross Wood and Sons Plumbing, he discovered that $70,000 was missing from Green Hills Plumbing. He said the defendant took checks from his company and deposited them into his father's company bank account. He said that the defendant's theft had had a "dramatic impact" on his business and that he wanted her to serve her sentences in confinement.

The defendant testified that she worked for Ross Wood, that they began a romantic relationship, and that Mr. Wood did not want anyone to know about their relationship. She said that Mr. Wood gave her cash and gifts but that she did not keep a record of the amounts or values. She said she pled guilty to the crimes in question because she had trusted her relationship with Mr. Wood

and because she did not document the cash and gifts he gave her. She said she left Tennessee in 1997, went to Missouri, and worked for Aaron's Automotive, Coca-Cola Company, and United Machinery. She said that she gave her Missouri employers her correct name and social security number and that she was not trying to hide there. She acknowledged that at the time of the sentencing hearing, she was on probation for a crime she committed in Missouri. She said she committed that crime after she committed the crimes in question and that she received a four-year sentence. She said that she was engaged to her ex-husband and that if the trial court gave her alternative sentences, she would live with him and her daughter. She said she would continue to receive counseling and would pay any restitution ordered by the trial court.

On cross-examination, the defendant testified that her Missouri conviction resulted from her forging two United Machinery checks. She said that she did not remember forging the checks, that they were worth about $5,000, and that she did not know what she did with the money. She said that she also had a 1989 conviction in Oklahoma for embezzling about $100,000 from an employer and that she spent time in prison for that conviction. She said that Ross Wood gave her most of the money in this case and that she used it to pay bills and to go to Oklahoma several times. She said Mr. Wood also bought her clothes, perfume, and shoes. She said she pled guilty because, in light of her prior criminal record, she did not think anyone would believe that Mr. Wood gave her the money.

Christina Moore, the defendant's daughter, testified that she and her father had a stable home, had jobs, and went to church. She said that her sister had died recently and that the defendant had been raising her sister's young son. She said that if the trial court granted the defendant's request for alternative sentences, the defendant would live with her and her father and that she would make sure the defendant fulfilled any of her sentencing requirements.

According to the defendant's presentence report, the then forty-eight-year-old defendant was a high school graduate and had custody of her two-year-old grandson. The report shows that the defendant received a seven-year sentence for her 1989 forgery conviction in Oklahoma. In the report, she stated that she had a hard childhood, was in good health, did not abuse alcohol or drugs, and was undergoing counseling. She also stated that as a result of her father's and daughter's recent deaths, she was not the same person that she was in 1997.

The trial court noted that the defendant had taken money from employers in three states and had served time in prison for stealing $100,000 from her Oklahoma employer. It also noted that after committing the offenses in question, she left Tennessee under suspicious circumstances and that a capias was issued for her arrest in May 1998. The trial court determined that the defendant had not taken responsibility for the crimes in this case and was not amenable to rehabilitation. It denied her request for alternative sentences and ordered that she serve her sentences in confinement.

The defendant contends that the trial court improperly denied her request for alternative sentencing. She argues that her prior criminal history did not prohibit the trial court from ordering alternative sentences and that because her prior crimes did not involve a threat to public safety,

confinement was not "needed to protect society." See Tenn. Code Ann. § 40-35-103(1)(A). In addition, she argues that no other factors in Tenn. Code Ann. § 40-35-103(1) support sentences of total confinement. Finally, she argues that because she has never been on probation or served an alternative sentence before, the trial court improperly held that she is not amenable to rehabilitation. The state responds that the trial court properly denied the defendant's request for alternative sentences. We agree with the state.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider that (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing Tenn. Code Ann. § 40-35-103(1)(A)-(C)). Additionally, a trial court should consider a defendant's potential or lack of potential for rehabilitation. Tenn. Code Ann. § 40-35-103(5).

We conclude that the trial court did not err by ordering the defendant to serve her sentences in incarceration. The defendant has two prior felony convictions for stealing from her employers, one for taking $100,000 from an employer in Oklahoma and one for taking a total of $5,000 from a Missouri employer. Despite receiving a seven-year sentence for her Oklahoma conviction and spending time in prison, the defendant continued to steal large amounts of money from companies in Tennessee and Missouri. Also, as the trial court noted, the defendant claims that Ross Wood gave her $220,000 in cash and gifts, indicating that she has not accepted responsibility for the crimes in question and that she does not reflect a high potential for rehabilitation. See State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994) (holding that a defendant's failure to accept responsibility for a crime is germane to her rehabilitation potential). We affirm the trial court's denial of the defendant's request for alternative sentences.

_____
JOSEPH M. TIPTON, JUDGE