# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2012

## STATE OF TENNESSEE v. ROBERT EDWARD WILLIAMS, III

**Appeal from the Criminal Court for Davidson County**
**Nos. 2010-B-1636;2010-C-2687;2011-B-1733     Cheryl Blackburn, Judge**

_____

**No. M2012-00545-CCA-R3-CD - Filed November 16, 2012**

_____

The Defendant-Appellant, Robert Edward Williams, III, appeals the Davidson County Criminal Court's imposition of an effective twenty-year sentence for his guilty pleas to theft of property valued at $10,000 or more but less than $60,000, a class C felony; criminal simulation of $1,000 or more but less than $10,000, a Class D felony; and failure to appear, a Class E felony. On appeal, he argues that the trial court erred by failing to: (1) impose the minimum sentence in the applicable range for each of his sentences, and (2) grant a community corrections sentence. Upon review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the Defendant-Appellant, Robert Edward Williams, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

The Davidson County Grand Jury indicted Williams for two counts of criminal simulation during its April 2010 term and for theft of property valued at $10,000 or more but less than $60,000 and forgery during its July 2010 term. On May 31, 2011, Williams failed

to appear in court for his trial on the theft and forgery charges, which resulted in his charge for felony failure to appear.

At the plea submission hearing on October 6, 2011, the State summarized the facts supporting Williams's guilty pleas:

If [Case Number 2010-B-1636] had gone to trial, the State's proof would have been that the police department and Secret Service were investigating some checks that were created and were not legitimate checks and were being passed. Initially[,] they had contact with a Marquis (phonetic) Burton. Mr. Burton was observed to meet with the co-defendant, [Williams]. [Williams] gave him a counterfeit check, the value of which was over $1,000. And then subsequently when he was arrested, he had some similar counterfeit checks on his person. That was here in Davidson County.

Case 2010-C-2687 was one we had set for a bench trial where . . . there was a business down in Franklin called Pinnacle Technology. And they changed locations, but their mail was still being sent to the original address. And they had a couple of checks, the total of which was over $10,000, stolen out of their mailbox. [Williams] obviously came into possession of those checks at some point because he showed up here at the Bank of Nashville after creating a company here in Davidson County called Pinnacle Technology. He showed up at the Bank of Nashville as a representative or owner of Pinnacle Technology with these checks and deposited the first one into his account, which he subsequently took money out of and used that money, and then deposited the second check into the account. The total amount of the checks, as I said, was over $10,000. There was video of this. Obviously the defendant had taken out the business license and then showed up and opened this checking account and used his real name. As I said, that case was set for a bench trial on May the 31st [sic] of this year. And [Williams] failed to show up for that bench trial. And these are all in Davidson County.

At the hearing, Williams acknowledged that the aforementioned facts were true. In Case Number 2010-B-1636, Williams entered a guilty plea to criminal simulation of $1,000 or more but less than $10,000, and the second count of criminal simulation was dismissed. In addition, in Case Number 2010-C-2687, he entered a guilty plea to theft of property valued at $10,000 or more but less than $60,000, and the forgery count in that indictment was dismissed. Finally, in Case Number 2011-B-1733, Williams entered a guilty plea to failure to appear.

**Sentencing Hearing.** At the December 7, 2011 sentencing hearing, the State and the defense agreed that the sentences for criminal simulation and theft convictions would be served concurrently and that the sentence for failure to appear would be served consecutively to those sentences. Williams conceded that he was a Range III, persistent offender for the criminal simulation and theft convictions and was a Range III, career offender for the failure to appear conviction. Williams faced a sentence of ten to fifteen years on the theft conviction, eight to twelve years on the criminal simulation conviction, and six years on the failure to appear conviction. See T.C.A. §§ 40-35-112(c)(3), (4), (5), -108(c) (2006). The trial court was tasked with determining the length, manner, and service of the sentences. The presentence investigation report and certified copies of Williams's convictions were entered into evidence.

Robert E. Williams, Jr., the Defendant-Appellant's father, testified that he was a preacher in Gibson County, Tennessee and that he was looking for a miracle for his son. He asked the court to have mercy on his son because he believed that his son had changed his ways and was ready to take responsibility for his actions.

Reverend Williams said he was willing to help his son pay the $10,000 in restitution and any other fees associated with this case. He stated that he owned a janitorial company and that his son had done a good job helping him with the company in the past. He believed that his son was capable of working and paying the fees associated with this case. Reverend Williams was concerned that his son's six-year-old and eight-year-old sons would not do well if their father were ordered to serve his sentence in confinement. He said he would drive his son to work and to meet with his probation officer if he were granted an alternative sentence. He claimed that his son no longer spent time with the individuals who were a bad influence on him and currently spent all of his time with his fiance, Jawanna Varnado.

Jawanna Varnado, Williams's fiance, testified that she had a three-month-old child with Williams and had three other children. She said she had known Williams for two years. Varnado stated that she was currently enrolled in school, had only one year before receiving her degree as a Registered Nurse, and worked full-time as a "CNT." Varnado said that Williams's incarceration had caused her to have anxiety attacks and migraine headaches because he was no longer able to help her with the children, housework, and cooking while she was at school. She said that she had recently moved in with her brother because she was unable to pay her rent or bills without Williams's help. Varnado said that if the trial court were to grant Williams an alternative sentence, Williams would get a job, assist in financially supporting the family, and provide help with the children.

Varnado said that Williams had changed his ways and was now a "really good guy." She claimed that they attended church and Bible study together and were devoted to the

children. She acknowledged that Williams had been convicted of several felonies other than the felonies in this case. However, she claimed that a sentence of confinement would be "an injustice" to their child, her children, and Williams's children because they would be deprived of a father figure. Varnado said that she knew Williams had changed because he admitted that he "messed up" and was "willing to fix what he[] messed up." She said that she would help Williams pay the outstanding restitution "as long as he [could] come home and help with his family."

When the trial court informed Varnado that Williams was currently married to another woman, Varnado said that Williams and his wife had been separated for the two years that she and Williams had been together. Varnado acknowledged that Williams had pending charges in Wilson County and Madison County.

Williams, the Defendant-Appellant, age forty-one, admitted that he committed the offenses in this case. He said he intended to file for divorce if he were released. He also said he knew he had to be held accountable for his choices in life and that he was currently making the right choices. When asked about his pending charge in Madison County, Williams responded that he believed the charge was a probation violation. He also said that his Wilson County charges for criminal simulation would be dismissed in January. Williams stated that he failed to appear for his May 2011 bench trial in Davidson County on his theft and forgery charges because he knew that he had outstanding arrest warrant for his failure to pay $10,000 in child support. He acknowledged that he should have appeared in court on that date.

Williams stated he was willing to work two different jobs to repay the $10,000 that he took from the Bank of Nashville. He said that if he were released, he would reside with Varnado. Williams asserted that he was "here to take responsibility for every wrong thing that [he had] done," that he was "sorry for the people [he] hurt," and that he hoped the court would be merciful in imposing his sentence.

Williams acknowledged that he had twelve children by ten different women. He stated that he had married three of these women and that his children ranged in age from newborn to fifteen years old. Williams said he fell behind on his child support obligations when he was ordered to serve four years in confinement in another case. He acknowledged that only three of the women with whom he had children had pursued child support from him. He claimed that he could legally support his twelve children by working two jobs.

When the trial court asked Williams if he had earned a degree from Lane College, Williams responded that he had received his degree. When the court informed Williams that the registrar at Lane College had reported that Williams stopped attending college on May

-4-

3, 1991, had not obtained a degree, and had completed only twenty-two hours towards his major of health and physical education, Williams admitted that the registrar's information was true. The court also informed him that his claimed employment at J.C. Penney and Buckle had not been verified.

When the court asked him about his claim that his Wilson County charges would be dismissed, Williams said that his attorney had told him that the charges would be dismissed or he would received a sentence of probation. The trial court noted that in October 2006, Williams failed to appear at a probation violation hearing in Madison County and on July 16, 2010, his probation in that county was found to have been violated and he was ordered to serve nine months before intensive probation was reinstated. Williams said that he served the nine months for the probation violation the previous year and had not committed any new offenses while on probation because the charges in the instant case were already pending at the time he was on probation in Madison County. When the trial court reminded Williams that he had committed the failure to appear offense in her court in May 2011 while he was on that probation, Williams claimed that no one informed him of his May 2011 court date. After further questioning, he acknowledged that he had committed the failure to appear offense while on probation in Madison County. He also acknowledged that he had never successfully completely probation for any of his convictions.

During the sentencing hearing, the trial court noted Williams's extensive criminal history, which included six felony convictions for theft, forgery, and fraudulent use of a credit car and three misdemeanor convictions for theft, driving on a suspended license, and use of a stolen tag. The court also noted that Williams had violated his probation four times in Madison County and two times in Davidson County. The trial court sentenced Williams as a Range III, persistent offender to concurrent sentences of fourteen years for the theft conviction and eleven years for the criminal simulation conviction and as a Range III, career offender to a consecutive sentence of six years for the failure to appear conviction, for an effective sentence of twenty years.

Regarding the issue of alternative sentencing, the trial court found that Williams was ineligible for probation because of the length of his sentences. The court also determined that Williams was not an appropriate candidate for community corrections because he had been unable to successfully complete his previous sentences of probation and because he had pending cases in Wilson and Madison County. The presentence investigation report indicated that Williams had an outstanding arrest warrant in Madison County for a violation of probation and was facing fourteen felony charges for criminal simulation in Wilson County. At the conclusion of the hearing, the trial court ordered Williams to serve his effective twenty-year sentence in confinement.

## ANALYSIS

Williams argues that the trial court erred in imposing an effective twenty-year sentence and erred in failing to grant him a community corrections sentence. The State responds that the record fully supports the sentence imposed by the trial court. We agree with the State.

First, Williams claims that the trial court should have applied the mitigating factors that he committed the offenses because he was motivated by a desire to provide necessities for his family or himself and that he indicated a strong desire to pay restitution to the victims. See id. § 40-35-113(7), (13) (2006). He also asserts that the trial court failed to impose "[t]he minimum sentence within the range of punishment" and failed to adjust "[t]he sentence length within the range . . . by the presence or absence of mitigating and enhancement factors[.]" Id. § 40-35-210(c)(1), (2) (2006).

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b) (2006). The defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A. § 40-35-401(d) (2006), Sentencing Commission Comments.

Because the 2005 amendments to the sentencing act gave trial courts broad discretion in sentencing, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, — S.W.3d — , 2012 WL 4380564, at *16 (Tenn. Sept. 26, 2012). Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. at *17. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" A trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006).

In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5) (2006). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2006).

The trial court's oral sentencing findings show that it thoroughly considered the purposes and principles of the sentencing act in determining Williams's sentence. The trial court determined that enhancement factors (1), (8), and (13), that the defendant had a history of criminal convictions or criminal behavior in addition to that necessary to establish his range, that the defendant had failed to comply with a sentence involving release into the community, and that the defendant was released on probation at the time of the offenses, applied to all three convictions in this case. See id. § 40-35-114(1), (8), and (13) (2006). It also determined that mitigating factor (1), that the defendant's criminal conduct neither caused nor threatened serious bodily injury, applied to all three convictions. See id. § 40-35-113(1) (2006). The court gave Williams some credit for mitigating factor (10), that the defendant assisted the authorities in locating or recovering any property or person involved in the crime. See id. § 40-35-113(10) (2006). In addition, the court determined that mitigating factor (13) applied because Williams had pleaded guilty to the offenses in this case. See id. § 40-35-113(13). The court noted Williams's extensive criminal history and inability to abide by his previous sentences of probation before sentencing him to an effective sentence of twenty years. See id. § 40-35-103(1)(A), (C). We conclude that the trial court did not abuse its discretion regarding the length of Williams's sentence.

Second, Williams contends that the trial court abused its discretion in denying him a community corrections sentence. He claims that the trial court inappropriately used his dishonesty in the presentence report to deny him all forms of alternative sentencing. See State v. Kevin S. Phillips, No. 03C01-9801-CR-00024, 1999 WL 135058, at *3 (Tenn. Crim. App., at Knoxville, Mar. 12, 1999), perm. app. denied, concurring in results only (Tenn. Sept. 13, 1999) ("[T]he untruthfulness of the defendant is relevant 'in determining the sentence alternative' and not as authority to deny all forms of alternatives to incarceration."); State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. 1994) (A defendant's potential for rehabilitation pursuant to section 40-35-103(5) becomes a factor for consideration only after the trial court has determined that a sentence of total confinement is improper).

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based

alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." Id. § 40-36-103(1) (2006). Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses; and

(2) Persons who are sentenced to incarceration or are on escape at the time of consideration will not be eligible for punishment in the community.

Id. § 40-36-106(a)(1)(A)-(F), (2) (2006). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." T.C.A. § 40-36-106(d) (2006).

Here, Williams acknowledged that he was a Range III, persistent offender for the theft and criminal simulations convictions and a Range III, career offender on the failure to appear conviction. Consequently, as the trial court noted, he was not considered a favorable

candidate for alternative sentencing. Although Williams claims that the trial court denied a community corrections sentence because of his dishonesty in the presentence report, we conclude that the record shows that the trial court denied a community corrections sentence because Williams had violated his probation four times in Madison County and two times in Davidson County, had been unable to successfully complete any of his previous sentences of probation, and had pending cases in Wilson and Madison County. We conclude that the trial court did not abuse its discretion in refusing to grant Williams a community corrections sentence.

Because the trial court sentenced Williams within the appropriate range, considered the purposes and principles of the sentencing act, and considered the appropriate enhancement and mitigating factors, we uphold Williams's effective sentence of twenty years in the Tennessee Department of Correction. See Bise, — S.W.3d — , 2012 WL 4380564, at *16-17. The trial court's judgments are affirmed.

**CONCLUSION**

Upon review, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE