IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## STATE OF TENNESSEE v. MORGAN ROA

**Appeal from the Criminal Court for Davidson County**
**No. 2003-D-2821      Steve Dozier, Judge**

───────────

**No. M2004-02560-CCA-R3-CD - Filed August 18, 2005**

───────────

The defendant, Morgan Roa, pled guilty pursuant to a plea agreement in the Davidson County Criminal Court to aggravated assault, a Class C felony. The defendant was sentenced as a Range I, standard offender to six years with the trial court to determine the manner of service of the sentence. After a sentencing hearing, the trial court ordered that the defendant serve his sentence in confinement. The defendant appeals, claiming that the trial court erred in denying him alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and J.C. MCLIN, J., joined.

Jerry Gonzalez, Nashville, Tennessee, for the appellant, Morgan Roa.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Pamela Sue Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's shooting James Hall during a birthday party. The victim was taken to the hospital for emergency surgery where he remained for approximately one month. The defendant was initially indicted for attempted second degree murder but pled guilty to aggravated assault.

At the sentencing hearing, the state submitted the defendant's presentence report. John Hickman testified that on August 26, 2003, he, his brother, and the defendant went to the birthday party of a friend and that the defendant drove them to the party in his truck. He said that he and the defendant had already been drinking beer that day and that they continued drinking beer when they arrived at the party. He said that sometime later, he became involved in a disagreement with a man

whose name he could not recall. He said that they were asked to leave and that as they were leaving, the defendant told him that people at the party were "trying to pull guns out on [them]." He said that he did not see any weapons but that the defendant said they needed to go back to the party and "handle this." He said that he did not know the victim and that he did not have any disagreement with him.

Mr. Hickman testified that he and the defendant drove to the defendant's house where the defendant picked up a 9-millimeter pistol. He said that the defendant asked him if he had a shotgun and that he replied yes. He said they drove to his father's house, picked up the shotgun, and returned to the party. He said that when they arrived, he left the shotgun in the truck and they resumed "hanging out" and drinking beer. He said that they asked the people there if anyone had attempted to pull weapons on them and that the people responded no. He said that approximately thirty minutes later, he heard shots coming from behind him. He said he responded by pulling the shotgun out of the car and shooting also. He said that when he turned around, he saw the defendant firing his pistol into the air. He said he did not see anyone get shot and did not learn anyone had been injured until after he was arrested. He said he retrieved his shotgun from the truck because he was "just drunk and stupid." He said he thought he shot into the air but learned later that he had shot a car. He said that after he and the defendant discharged their weapons, they got into the truck and drove back to his father's house. He said the defendant showed no emotion and said very little on the trip back.

On cross-examination, Mr. Hickman testified that he drank fifteen to twenty beers the day the shooting occurred and that he did not recall seeing anyone with weapons or shooting except the defendant. Upon questioning by the trial court, he stated that after he was released from jail, he asked the defendant what happened at the party and the defendant said "they" tried to pull a gun on him.

The victim testified that the defendant shot him and that he had not met the defendant before attending the party. He stated that immediately before the shooting, everyone at the party was arguing. He said that he ran outside and told everyone to shut up and that the defendant said something. He said that he started walking toward the defendant and when he was twenty or thirty feet away, the defendant pulled out a gun and told him to stop. He said he stopped walking, instructed the defendant to put his gun away, and said, "Y'all need to leave." He said he had only a beer in his hand and no weapon. He recalled that he saw a "bunch of flashes and a bunch of gunfire" and before he knew what was happening, the defendant was leaving.

The victim testified that he was shot in the abdomen and that the bullet severed his colon. He said he was hospitalized for one month and wore a colostomy bag for seven months. He said the wound took one and one-half to two months to heal. He said that after his wound became infected, it was reopened and cleaned, which took an additional month to heal.

On cross-examination, the victim testified that he saw no one shooting other than the defendant and Mr. Hickman. He said that the shooting took place at 3:00 or 4:00 a.m. and that it was

dark outside. He said that he stopped when the defendant told him to do so and that he even backed up one or two feet. He admitted that he was drinking heavily during the party and that his blood alcohol content was unusually high. He conceded that he barely recalled the trip to the hospital because of his level of intoxication and that he incurred no out-of-pocket expenses due to the injury.

Gema Roa testified that she was the defendant's mother and that the defendant could live at home if granted alternative sentencing. She said that employment at an alterations shop was available for the defendant if he was released and that he was attending "diesel college." She said that the defendant was a respectful, loving person and that his family supports him. On cross-examination, she denied that the defendant had a bad temper but admitted that he could become angry very easily when drinking alcohol. She said that his drinking and fighting caused him to be convicted for resisting arrest on one occasion.

Martina Goldthreate testified that the defendant was the father of her daughter, who would be two years old the next month. She said the defendant and her daughter had a great relationship and that he assisted her with raising the child and supported her by paying for day care, insurance, and clothing. On cross-examination, she acknowledged that the defendant had a temper when drinking and also a substantial drinking problem. She said she was unaware that the defendant owned a gun. Upon questioning by the trial court, Ms. Goldthreate said that the defendant told her that he shot into the air a couple of times while at the party but that he did not recall shooting anybody.

At the conclusion of the sentencing hearing, the trial court noted that a discussion took place during the plea submission hearing concerning who shot their weapons and that the defendant still professed, through his attorney, uncertainty as to whether he shot the victim. The trial court found that the defendant shot the victim and that the victim's injuries were severe and could have been fatal. The trial court found no mitigating factors but determined that several enhancement factors applied to the defendant. The court found that the defendant had a prior history of criminal convictions, albeit misdemeanors, and criminal behavior, noting that he admitted to extensive drug usage according to the presentence report. See T.C.A. § 40-35-114(2). It also found that the defendant was a leader in the commission of the offense, by causing two persons to bring weapons to the party, and that the risk to human life was high, considering that persons other than the victim were present while the defendant was shooting his 9-millimeter pistol. See T.C.A. § 40-35-114(3), (11). Noting the extent of the injuries to the victim, the trial court found confinement appropriate to avoid depreciating the seriousness of the offense and justly deserved given the circumstances. The trial court also found the defendant was not amenable to rehabilitation, based on the defendant's attempts to "lessen his culpability in this offense," and that society needed to be protected from such criminal acts.

On appeal, the defendant argues that the trial court erred in denying alternative sentencing. He contends that the use of a deadly weapon and causing serious bodily injury are elements of the convicted offense and, as such, they are improper factors for the trial court to consider during sentencing. He also contends that the trial court improperly based its sentencing determination, in

part, on the defendant's attempt to "lessen his culpability" and that it failed to use the proper standard of proof when determining whether an alternative sentence was inappropriate, thus violating the rule announced in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). The state contends that the trial court properly denied the defendant alternative sentencing. We agree with the state.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if confinement is appropriate, a trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. §§ 40-35-103(5), -210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4).

Initially, we note that any evidence presented at the guilty plea hearing should be considered in determining the appropriate sentence. See T.C.A. § 40-35-210(b)(1). At the beginning of the sentencing hearing in this case, the trial court referred to a discussion that occurred during the plea submission hearing. However, the defendant has failed to include in the record on appeal a transcript of the guilty plea hearing relating to his conviction. It is the duty of the defendant to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. T.R.A.P. 24. Ordinarily, failure to include the transcript of the guilty plea hearing in the record prohibits the court's conducting a full de novo review of the sentence under T.C.A. § 40-35-210(b). However, a record of the witnesses and their testimony was developed in the sentencing hearing and suffices for purposes of this review.

Because the defendant was convicted of a Class C felony, he is entitled to the presumption that he is a favorable candidate for alternative sentencing in the absence of evidence to the contrary. T.C.A. § 40-35-102(6). However, the trial court found that the defendant's criminal history, along

with the circumstances and nature of the defendant's offense and his admitted drug problems, justified a sentence to confinement. The presentence report contains four prior misdemeanor convictions, and the evidence presented at the sentencing hearing indicates the defendant also has a problem with alcohol abuse. The trial court found confinement was necessary to avoid depreciating the seriousness of the offense, noting that the victim's injuries were severe and could have been fatal. The trial court determined that several enhancement factors applied, i.e., the defendant was a leader in the commission of the offense involving two or more criminal actors and that the risk to human life was high. See T.C.A. § 40-35-114(3), (11). It also found the defendant was not amenable to rehabilitation, based on the defendant's attempts to "lessen his culpability in this offense," and that society needed to be protected from such wanton criminal acts. We conclude the trial court's factual findings are adequately supported in the record and that a sentence of confinement is appropriate.

The defendant contends that the trial court erred in using factors which were elements of his convicted offense to deny alternative sentencing, i.e., use of a deadly weapon and infliction of serious bodily injury, citing State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997). His reliance on Poole is misplaced. The record reflects that the trial court considered only the serious nature of the victim's injury inflicted by the defendant and not the defendant's use of a deadly weapon in determining the manner of service of the sentence. The judgment and the indictment indicate that the convicted offense was aggravated assault by use of a deadly weapon. Thus, serious bodily injury was not an element of the convicted offense, and the trial court's consideration of this factor was not error.

The defendant also contends that his refusal to admit guilt to the extent the trial court desired should not be a basis for denying alternative sentencing. The record reflects that in finding the defendant not amenable to rehabilitation, the trial court stated that the defendant "through his wife, through Mr. Hickman, . . . lessens his culpability in this offense." The trial court also stated that the defendant was "still taking the position through his attorney that he's not sure that he shot [the victim], that, maybe, it was Mr. Hickman or, maybe, it was [an] unknown person with an unknown weapon." We note that the trial court based its manner of service determination on a number of factors, only one of which was the defendant's amenability to rehabilitation. In any event, to the extent the trial court found this factor applicable, we agree that the defendant's refusal to accept responsibility for his crime, i.e., his assertion that the codefendant or some other person may have shot the victim, reflects negatively on his potential for rehabilitation. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994); State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992).

Regarding the trial court's denial of probation, we note that the determination of whether a defendant is entitled to alternative sentencing requires a different inquiry than when probation is considered. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When a defendant is entitled to the statutory presumption in favor of alternative sentencing, the state has the burden of overcoming the presumption, as it did in this case. See T.C.A. § 40-35-102(6); Ashby, 823 S.W.2d at 169. On the other hand, a defendant has the burden of establishing suitability for total probation.

See T.C.A. § 40-35-303(b); State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). The defendant failed to demonstrate such suitability.

The defendant also contends that the trial court's denial of alternative sentencing without stating what standard of proof he gave to the factors used in that denial violates the rule set forth in Blakely. The defendant argues that although he waived his right to have a jury decide the facts used to rebut the presumption in favor of alternative sentencing, he did not waive his right to have those facts proven beyond a reasonable doubt and that the trial court erred by using the "old" standard: preponderance of the evidence.

The defendant's reliance on Blakely is misplaced. In State v. Gomez, 163 S.W.3d 632 (Tenn. 2005), our supreme court recently held that Blakely does not affect Tennessee's sentencing scheme. The defendant is not entitled to relief on this issue.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE