# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 3, 2010

## STATE OF TENNESSEE v. WARREN PARKER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-08080     John T. Fowlkes, Jr., Judge**

---

**No. W2009-02578-CCA-R3-CD  - Filed December 7, 2010**

---

The defendant, Warren Parker, appeals the trial court's denial of any form of alternative sentencing. The defendant entered a guilty plea to three counts of aggravated assault, a Class C felony, and one count of evading arrest, a Class A misdemeanor. He was sentenced to concurrent six year sentences for the Class C felonies and to a concurrent eleven-month, twenty-nine-day sentence for the Class A misdemeanor. After careful review, we affirm the trial court's judgments that deny alternative sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and J.C. MCLIN, JJ., joined.

Mark Renken (on appeal) and Lorna McClusky and Claiborne H. Ferguson (at trial), Memphis, Tennessee, for the appellant, Warren Parker.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The events underlying this case arose after an incident near a McDonald's restaurant located at 6048 Stage Road in Shelby County, Tennessee. The defendant got into an altercation with the victims, left to go to his residence where he retrieved a .270 caliber rifle, and then returned to the scene. The defendant fired three shots at the victims as they tried to leave. He struck a juvenile victim twice and another victim once with his shots. Traveling in excess of eighty miles per hour while driving through neighborhood streets, the defendant fled the scene to avoid police officers. The defendant eventually lost control of his vehicle

and struck a patrol car. The defendant was taken into custody, and a search incidental to arrest revealed that he was in possession of 3.3 grams of marijuana. The defendant was advised of his *Miranda* rights and acknowledged that he retrieved the weapon, returned to the scene, and fired three shots at the victims.

The trial court conducted a sentencing hearing on November 12, 2009, where the defendant testified that he would be a good candidate for probation. He testified that he had just turned eighteen years of age at the time of the crimes, was self-employed, and planned to attend vocational school. His version of events suggested that the victims initially accosted him while he was in the drive-thru lane at McDonald's. The defendant testified that he was exiting the parking lot when the victim's car pulled out from a parking spot and hit his car. He claimed that the victims tried to drag him from his vehicle, but his girlfriend drove them to safety.

The defendant testified that the victims chased him to his parent's driveway before they left. He went inside the home, retrieved a deer rifle, loaded the gun, and returned to McDonald's. He arrived there at approximately 1:00 a.m., when he saw the victim's car charging him. He claimed that he fired in self-defense. The defendant testified that he fled when he saw the police stop the victim's car. He refused to stop for police and got into an accident. He claimed that he did not intentionally hit the officer's car and was ashamed of what transpired. He acknowledged that he had consumed beer and smoked marijuana on the night of the crimes. He admitted that he should have phoned the police but claimed he was not "thinking straight." His girlfriend tried to talk him out of getting the rifle and tried to get him to stop while he was pursued by the police. He also acknowledged that he had been arrested for vandalism while on bond for the underlying crimes but insisted that it was a misunderstanding.

The defendant's father testified that he and his wife had given the rifle to the defendant as a gift because they were avid hunters. The rifle was a bolt-action deer rifle. He testified that the defendant had become withdrawn since the incident and still wanted to attend school. He said that his son did not wake him on the night of the crime when he came to retrieve the rifle.

The trial court sentenced the defendant to concurrent six-year sentences for the three convictions for aggravated assault and to a concurrent eleven-month, twenty-nine-day sentence for evading arrest.

Analysis

On appeal, the defendant argues that the trial court erred in denying probation.

Specifically, the defendant contends that the trial court did not assign proper weight to the factors presented to mitigate his sentence. This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. T.C.A. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Comm'n Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210(b), to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in [sections] 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. T.C.A. § 40-35-103(1); *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and 114, as they are relevant to the section 40-35-103 considerations. T.C.A. § 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as

well. T.C.A. § 40-35-103(2); *State v. Batey*, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986).

Pursuant to the 2005 revisions to the Sentencing Act, a defendant is eligible for probation if the sentence received by the defendant is ten years or less, subject to some statutory exclusions. T.C.A. § 40-35-303(a) (2006). An especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline. T.C.A. § 40-35-102(6).

When the case involves a plea, our supreme court has held that it is proper for a trial court to look behind a plea bargain and consider the "true nature of the offenses committed" in setting a sentence within that range. *State v. Hollingsworth*, 647 S.W.2d 937, 939 (Tenn. 1983).

The record before this court does not contain a transcript of the defendant's guilty plea hearing. In order to conduct an effective appellate review of sentencing, a transcript of the guilty plea hearing is necessary. *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). The transcript of the guilty plea hearing is usually necessary in order for this court to ascertain the facts and circumstances surrounding the offense. Indeed, the guilty plea hearing is the equivalent of a trial. *Id*. at 843. In the absence of a transcript of a guilty plea hearing, this court must generally conclude that the sentence imposed by the trial court was correct. *Id*. at 844.

The presentence report in the record contains a statement about the crimes from the perspective of the State. The record also contains a transcript from the defendant's petition to suspend sentence which consists of the testimonies of the defendant and his father, who asked the court to grant probation. In the trial court's discussion of sentencing, the court noted the defendant's favorable social history and strong family support, factors that support his request for probation. However, the trial court specifically found the defendant was not a credible witness with regard to his version of events. The defendant testified that he was trying to locate a pay phone to call the police just prior to the shooting. The court noted that the victim's vehicle had already passed the defendant when he fired a second shot into the automobile, refuting his claim of self-defense. The court found the circumstances of the crime to be egregious and extreme. The court found that, rather than contact the authorities or his parents, the defendant armed himself with a powerful weapon and returned to the scene

over the objections of his girlfriend. The court found the defendant's attempt to elude police even more egregious because he led them on a high speed chase through a residential area before ultimately crashing into a police officer's vehicle and seriously injuring an officer. The court also concluded that the defendant had received a tremendous benefit through the terms of the plea agreement and denied probation. The defendant's failure to include a transcript of the guilty plea causes this court to conclude that the sentence imposed by the trial court was correct. Therefore, the defendant is not entitled to relief.

Our review of the record before us supports a conclusion that the trial court did not abuse its discretion in determining that a period of confinement was necessary based on the circumstances of the offense. The defendant's actions demonstrated that he intended to exact deadly force on the victims for the events that proceeded the shooting in the parking lot of McDonald's. He lacked credibility in his assertion that he was looking for a phone to call police because he could have easily phoned the police from the safety of his residence when he retrieved the rifle. There was no need for him to return to the scene and engage the victims. The defendant's behavior justifies the conclusion that he intended to shoot the victims. Further, if he was looking for the police to arrive, he would not have engaged them in a high speed chase in a residential area. Given the actions of the defendant, the trial court properly found that the circumstances of the crimes justified a denial of alternative sentencing.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE