# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs January 29, 2013

## STATE OF TENNESSEE v. STEVEN HOOD

**Appeal from the Criminal Court for Knox County**
**No. 99138     Steven W. Sword, Judge**

**No. E2012-01597-CCA-R3-CD - Filed February 14, 2013**

The defendant, Steven Hood, pled guilty to robbery and aggravated assault, Class C felonies, in exchange for an effective sentence of eight years, and the trial court imposed a sentence of incarceration. On appeal, the defendant challenges the trial court's denial of community corrections. After review, we affirm the trial court's sentencing decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, Steven Hood.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted on one count of aggravated robbery and two alternate counts of aggravated kidnapping. The facts giving rise to these charges were stipulated to by the parties at the plea hearing as follows:

> The testimony would be that Mr. Sam Cox had been called by [the defendant] and . . . [the defendant] told Mr. Cox that his vehicle had broken down at the Walgreen[s] on Kingston Pike and [he] needed help.

Once Mr. Cox arrived at the Walgreen[s], the defendant, along with a codefendant who was armed with a knife, forced Mr. Cox into this newer model Altima and drove him around to an unknown location, and made a demand for his money and his medication. [The defendant] was able to get the money and medication–or was able to get money from the victim, Mr. Cox. Mr. Cox was able to get free, and he . . . was able to stop somebody, a driver, and asked them to contact the authorities.

The authorities were contacted. Mr. Cox told the authorities what had happened, and [the defendant] was identified and arrested. We were not able to identify the other person, and as part of this agreement, [the defendant] agrees to be cooperative with law enforcement and identify the other person and to testify truthfully if called upon to testify at trial.

The defendant pled guilty to the lesser-included charge of robbery in count one and received an eight-year sentence as a Range II offender. He pled guilty to aggravated assault in count two and received a concurrent, Range II, eight-year sentence. Count three was dismissed. The parties agreed that the defendant would apply for probation, and the trial court would determine the manner of service.

The trial court conducted a sentencing hearing, at the beginning of which a drug test was administered to the defendant. The probation officer reported to the court that the defendant tested positive for "amphetamine, cocaine, methadone, opiates, and Oxy." When asked by the court if he had a drug problem, the defendant responded, "Well, I have some prescriptions." The defendant claimed that he had a prescription for the "Oxys and morphine" but admitted that he did not have a prescription for cocaine.

The prosecutor informed the trial court that she did not believe the defendant was a good candidate for probation, noting that the defendant had "picked up" a driving on a suspended license charge during his release awaiting sentencing and was "using drugs." The defendant conceded the new charge, but he explained that the suspension was for failure to satisfy citations and that the State had agreed to reset the case so he would have his license reinstated by that point. Defense counsel asked the court to allow the defendant to be evaluated for the enhanced probation program and the Community Alternatives to Prison Program ("CAPP").

The trial court acknowledged the defendant's request and stated that it was going to refer the defendant's case to enhanced probation and CAPP for evaluation. The court said that it was also going to refer the defendant to drug court, "even though in the presentence investigation report he said that last reported use was 2004. Obviously, he still has some

issues. Even though he has prescriptions, he doesn't have prescriptions for all that." The court took the defendant into custody pending sentencing "because he's continued to engage in illegal substance use, and he's a high risk with a long history, including an aggravated assault conviction." Thereafter, the case was continued until the alternative sentencing reports were completed.

Tony Peterson of CAPP reported that the defendant was "technically ineligible for placement on the CAP[P] program" because of the violent nature of his offenses. He also reported that he considered the defendant "not appropriate for placement on CAPP and a poor candidate for successful completion of community sentencing of any type" due to his criminal history and "propensity for committing violent offenses . . . coupled [with] his history of multiple revocations from community sentencing[.]" Betsy Xenos with the Knox County Drug Court reported that the defendant was not eligible for drug court due to his prior conviction for aggravated assault.

Suzanne Green of the enhanced probation program reported that she interviewed the defendant at the Knox County Detention Facility. She noted that the defendant denied having any substance abuse issues despite his positive drug test. She said that the defendant told her that he had prescriptions for morphine and oxycontin and admitted that he took methadone and amphetamine a few days before the sentencing hearing. She stated that the defendant claimed he was willing to comply with the requirements of enhanced probation but was not willing to consider the possibility of living in a halfway house. In determining that the defendant was not an appropriate candidate for enhanced probation, Green concluded that "[t]he defendant has been afforded the privilege of community supervision twice in the past and revoked. In spite of prior periods of incarceration and community supervision, he has continued to commit violent offenses. The defendant refused to discuss his current charges and denied or minimized his past behavior."

The defendant's presentence report showed that the defendant, age thirty at the time of the report, had a criminal history including convictions for aggravated burglary, aggravated assault, felony vandalism, fraudulent use of a credit card, and driving while impaired and that he had probation and parole revocations in the past. He reported three verifiable prior employments, spanning tenures from two months to eight months in length, and said that he had been "doing lawn care" since 2009 but did not provide verification of income. He has a one-year-old son, who was placed into state custody at birth due to his mother's drug addiction. He claimed to be in the process of gaining custody of his son and had an upcoming child support hearing. The probation officer who prepared the report considered the defendant "a high risk for successful completion of supervision."

The defendant last reported using illegal drugs in 2004. He said that he used LSD

once as a teenager and used marijuana "rarely" from ages sixteen to eighteen. He stated that he used Xanax "on occasion" when he was twenty-two, but he "'couldn't function' on Xanax and had no interest in other drugs." He denied using any other illegal or non-prescribed drugs.

At the continuation of the sentencing hearing, defense counsel explained that the defendant was unwilling to live in a halfway house because of the effect that would have on his child custody situation. Specifically, he believed that "DCS w[ould] go forward with termination proceedings" if he lived at a halfway house.

After hearing the arguments of the parties, the trial court noted that it had reviewed the presentence investigation report, as well as the reports from CAPP, the drug court, and enhanced probation. In imposing a sentence of confinement, the court began by stating that one of the things it considered was the need to protect society by restraining a defendant with a long history of criminal conduct, noting that the defendant had a "lengthy criminal history, including aggravated assault convictions in the past." With regard to the need to avoid depreciating the seriousness of the offense, the court observed that robbery and aggravated assault were serious offenses, but there was nothing "about the particular facts of this case that make it particularly suited toward confinement[.]"

Looking at the past use of measures less restrictive than confinement, the court found that the defendant had "been given the opportunity to probation in the past as well as parole and ha[d] been revoked from both of those." The court lastly addressed the defendant's potential for rehabilitation, observing that it "ha[d] some real concerns about it." The court noted that the defendant "ha[d] some drug issues. When we were here in June you were positive for cocaine and a lot of other stuff. . . . [E]ven though drug addiction is a treatable need, . . . at this point where you stand, I think gives you a lack of a potential for rehabilitation." The court concluded, "[B]ased upon all that, particularly with heavy guidance on your prior criminal history, as well as revocations in the past, I do find that incarceration is an appropriate sentence in this case."

## ANALYSIS

The defendant challenges the trial court's imposition of a sentence of confinement, specifically asserting that he "was appropriate for community corrections based on his special treatable need."

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In State v. Caudle, our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." ---S.W.3d---, 2012 WL 5907374, at *5 (Tenn. Nov. 27, 2012).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

To qualify for consideration for punishment in the community, an offender must meet all of the following criteria:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

Id. § 40-36-106(a)(1).

Under the "special needs" provision of the statute, an offender who does not otherwise meet the criteria above "and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community" may be considered eligible for a community corrections sentence. Id. § 40-36-106(c). In making this determination, the trial court must first find that the defendant is eligible for probation and then must determine that (1) the defendant has a history of chronic alcohol, drug abuse, or mental health problems; (2) these factors were reasonably related to and contributed to the defendant's criminal conduct; (3) the identifiable special need(s) are treatable, and (4) the treatment of the special need could be best served in the community rather than in a correctional institution. State v. Grisgby, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997) (citations omitted).

However, even where a defendant meets the eligibility requirements of the statute, the defendant is not automatically entitled to participate. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998). The defendant "bears the burden of affirmatively showing a 'special need' which could be better addressed in the community." Grisgby, 957 S.W.2d at 547 n.11. Moreover, the trial court is in the best position to ascertain a defendant's

-6-

amenability to a community corrections program given its ability to observe the defendant's demeanor and characteristics first hand. Id. at 547.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

In this case, we cannot conclude that the trial court abused its discretion in imposing a sentence of confinement. First, it is not entirely clear that the defendant has a history of drug abuse because the defendant himself has repeatedly denied having a drug problem. He told the presentence investigator that he had not consumed illegal substances since 2004 and had only done so occasionally prior to then. After his positive drug screen before the sentencing hearing, the defendant attempted to explain the results by saying he "ha[d] some prescriptions." Later, he told Suzanne Green, who was evaluating him for enhanced probation, that he had no substance abuse issues. It appears as though the defendant either does not have a drug problem and is therefore not eligible for community corrections under the "special needs" provision, or he is being untruthful about his drug usage which reflects poorly on his potential for rehabilitation. See State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994) (noting that a defendant's truthfulness is probative of his potential for rehabilitation).

Second, there has been no showing that the defendant's drug problem, if there is one, was reasonably related to and contributed to his criminal conduct. The defendant has shown no corollary between his drug use and past or present criminal conduct. The mere fact that he took medication from the victim in this case does not necessarily indicate that he has a drug problem; he could have just as easily intended to sell the pills.

In sum, the defendant has failed to carry his burden of affirmatively showing a special need which could be better addressed in the community. Moreover, the court analyzed the defendant's need for incarceration and determined that the defendant had a lengthy criminal history and that measures less restrictive than confinement had been frequently tried without success. The record supports the trial court's determination and justifies the imposition of a sentence of confinement.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the trial court's imposition of a sentence of confinement.

_____
ALAN E. GLENN, JUDGE