FILED

DEC 27 2024

Clerk of the Appellate Courts
Rec'd By

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 17, 2024

## STATE OF TENNESSEE v. APRIL R. AUSTIN

### Appeal from the Criminal Court for Knox County
### No. 125309   Steven Wayne Sword, Judge

### No. E2024-00307-CCA-R3-CD

The defendant, April R. Austin, was indicted by the Knox County Grand Jury for four counts of theft of property valued over $2500 and four counts of theft of property valued over $1000. The defendant pled guilty to one count of theft of property valued over $2500 and one count of shoplifting. Per the terms of the plea agreement, the defendant agreed to concurrent sentences of three years for her theft conviction and eleven months and twenty-nine days for her shoplifting conviction with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court order the defendant to serve one year in confinement for her theft conviction with the reminder suspended to probation. Additionally, the trial court ordered the defendant to serve her concurrent sentence of eleven months and twenty-nine days for her shoplifting conviction in the county workhouse. On appeal, the defendant contends the trial court erred in ordering split confinement and denying her request for full probation. Upon our review of the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., and D. KELLY THOMAS, JR., S.J., joined.

Clinton E. Frazier, Knoxville, Tennessee, for the appellant, April R. Austin.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Jeannine Guzolek, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts and Procedural History*

**Plea Hearing:**[1]

On October 5, 2023, the defendant pled guilty to one count of theft of property valued over $2500 and one count of shoplifting. The facts underlying the plea, as explained by the State, were as follows:

> [I]f called to trial in this matter, we would call the witnesses listed on the indictment, and the proof would be that officers with the Knoxville Police Department were flagged down by the asset protection employee, Cole Bruner, on January 28, 2023. He told officers that he had been surveilling three suspects on closed circuit cameras. He had noticed that these three individuals had hidden multiple items inside of bags and that they were about to walk out of the building past the point of sale without paying for the items.
>
> Mr. Bruner also advised that the three suspects were also BOLO'd as having taken a stack of shopping bags from the Belk rack and then went to the Bath and Body Works taking multiple items. As the officer stood outside of the kid apparel entrance there in West Town mall, the three defendants walked past the point of sales, and that would be April Austin, Ladeirdre Austin, and Ashley Robinson, and they attempted to walk out of the final door outside the foyer.
>
> Officers gave these three individuals verbal commands to sit down. Ms. Robinson fled on foot, and officers were able to capture her. These defendants were eventually taken into custody, and all of these defendants were read their *Miranda* rights, and they waived those rights and agreed to talk to the officers. Each defendant admitted to having attempted to steal property and then proceeded to pick out individual items that were hung up on a coat rack and laid them into piles claiming the items that each individual had attempted to walk out of the store with.
>
> The defendant, April Austin, requested officers to take her keys and give them to a family member to come and pick up her vehicle within a 30-minute time span. Officers located Ms. Austin's vehicle, and they did observe in

---

[1] The defendant was indicted along with two other codefendants, and the trial court conducted a joint plea submission hearing for all three defendants.

plain view a large stack of Belk shopping bags that had been reportedly taken earlier from the Belk shopping store.

Further proof would be that all of the merchandise that was taken was valued more than 2500 dollars from Belk. The items that were taken from Bath and Body Works was less than 1,000 dollars. All this was taken without the permission and consent of these stores.

Further proof would be that all these events took place in Knox County.

At the conclusion of the plea submission hearing, the trial court found that there was a factual basis to support the defendant's plea and that the defendant's plea was knowingly and voluntarily entered.

**Sentencing Hearing:[2]**

On February 9, 2024, the trial court convened a sentencing hearing. During the hearing, the State introduced the presentence investigation report. The report revealed the defendant has four prior convictions for theft, two additional prior arrests for theft that were later dismissed, convictions for leaving the scene of an accident and driving on a revoked license, and a pending theft charge in Hamilton County. Additionally, the defendant's risk needs assessment classified the defendant as a low risk to reoffend.

In addition to the presentence investigation report, the State called two witnesses, Cole Bruner and Jennifer Ward. Mr. Bruner, the asset protection lead at the East Town Belk Department Store in Knoxville, testified concerning retail theft within the company. According to Mr. Bruner, after yearly inventory, the company generates a "shrink number" which is "the difference between the merchandise that is accounted for in our system for the store and what is physically counted at the end of the year." Mr. Bruner stated that "external theft" accounts for all or most of all the "shrink number." Mr. Bruner reviewed "shrink number" reports from several stores within Knox and Hamilton Counties. According to the reports, the each of the stores in those counties lost a collective average of close to $500,000 a year during the three-year period of 2021-2023. Those reports were then admitted into evidence.

When asked why one should be concerned with these shortages or losses, Mr. Bruner stated that the loses affected both the community and the employees. Shortages

---

[2] The trial court held a joint sentencing hearing for the defendant and her codefendant, Ladeire Austin. Therefore, while the trial court at time addresses both individuals during the hearing, this Court has relied solely on the comments relating to the defendant.

affect what the store carries as well as the prices the store charges for the items it carries. Additionally, "the biggest problem we have is that when we lose a lot of product, we lose a lot of jobs." Employees' salaries and bonuses are also affected by loss, as yearly raises are based off the store's and the company's "shrink number." According to Mr. Bruner, when the company has a year with a high theft rate, "they have to cut a lot of people." Mr. Bruner also noted that the company has had to close some locations "in surrounding states where the theft was not take care of."

The State also called Jennifer Ward, a criminal analyst for the Knox County Sheriff's Office. Ms. Ward testified that as a criminal analyst her job is to gather data "from different resources to determine crime statistics, historical trends, . . ., potentially where crime areas may be higher, lower, which crimes are increasing, decreasing, [and] things of that nature." In preparing for her testimony in the instant matter, Ms. Ward reviewed the data concerning retail theft in Knox County from 2019 to 2023. Prior to discussing her findings, Ms. Ward noted that she did not have access to the city records, so her numbers only involve matters in which the Knox County Sherrif's Department was involved, do not include statistics from the City of Knoxville, and only include incidents in which law enforcement was called. According to Ms. Ward, there were 856 reported cases of retail theft in 2019; 1,444 reported cases in 2020; 1,157 reported cases in 2021; 1,271 reported cases in 2022; and 1,092 reported cases in 2023. Ms. Ward's report also noted that during those years, twenty-seven percent of the individuals involved lived outside of Knox County.

Upon the conclusion of the testimony and the argument of counsel, the trial court denied the defendant's request for full probation and imposed a sentence of split confinement. More specifically, the trial court ordered the defendant to serve one year incarceration with the remaining two years suspended to probation for her theft conviction and ordered the defendant to serve her concurrent eleven month and twenty-nine-day sentence of shoplifting in confinement. In support of the sentence imposed, the trial court stated,

> [T]he [c]ourt has reviewed the record in the case, including the plea agreement, as well as the proof that's been presented today, the arguments that have been presented to the [c]ourt, including the PSI, principles of sentencing, which I'm gonna go over in just a moment, nature and characteristic of criminal conduct, mitigation/enhancement which isn't terribly influential on the [c]ourt's decision today due to the fact that we have an agreement as to the length of sentence, but that can be like guidance to the [c]ourt as to manner of service as well too, and then the statistical information presented through the state, and then the allocution of [the defendant].

-4-

Additionally, while noting the defendant was a favorable candidate for probation, the trial court found there was a need to protect society based on the defendant's long criminal history. In support of this finding, the trial court noted that the defendant has four prior theft convictions and "additional convictions for other misdemeanors, so although they are not what we classify as serious offenses, she does have a significant number of those."

Next, the trial court reviewed whether confinement of the defendant was necessary to avoid depreciating the seriousness of the offense. In finding this factor applicable, the trial court relied on the testimony of Mr. Bruner concerning the large losses suffered by Belk Department Stores both in Knox and Hamilton Counties and how these losses not only affect the company, but they also affect the customers by determining the prices charged and the products carried. More importantly, according to Mr. Bruner, when the company has large losses, it affects the employees' salaries and bonuses and possibly their employment. The trial court also noted that "even though these are property crimes, that it is very serious because it is part of an epidemic that we are seeing not only in Knoxville, Knox County, not only the State of Tennessee, but in our entire country." Additionally, the trial court, relying on the fact that the defendant had been granted probation in the past for a retail theft conviction, found that "confinement could act as a specific deterrence to [the defendant]." Moreover, the trial court noted that retail theft "is a crime of increasing prevalence inside the community" and, therefore, some term of confinement served as a general deterrent to the public.

Finally, the trial court found that past attempts at measures less restrictive have been unsuccessful. The defendant had been granted both diversion and probation for past theft convictions. Despite the use of these less restrictive measures, the defendant continued to commit theft offenses, including the thefts in the instant matter.

At the conclusion of the hearing, the trial court held that,

upon your plea of guilty to theft in count No. 2, D felony level offense, the Court now sentences you to three years, range I standard offender. The Court is [going] order you to stay out of all Belk stores. I find that confinement is warranted. I do not believe I need to send you to the penitentiary, but I do believe that the maximum split-confinement sentence of one year is warranted in your case. So, the Court does sentence you to serve one year in local detention. Count No. 6 is shoplifting. That is 11 months and 29 days to stay out of all Bath and Body stores. So you'll be coming into custody on that.

This timely appeal followed.

## Analysis

On appeal, the defendant contends the trial court erred in not granting her full probation. She argues that one year of confinement was not "the least severe measure necessary to achieve the purpose for which the sentence is being imposed." The State submits the record supports the judgment of the trial court, and therefore, the trial court did not abuse its discretion by imposing split confinement.

Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of appellate review applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). As the supreme court has clarified, "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

In this context, "this deferential standard of review is subject to an important caveat: the trial court must 'place on the record any reason for a particular sentence.'" *State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *5 (Tenn. Crim. App. Apr. 12, 2023) (quoting *Bise*, 380 S.W.3d at 705), *no perm. app. filed*. After all, "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence." *Bise*, 380 S.W.3d at 706 n.41.

"Any sentence that does not involve complete confinement is an alternative sentence." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024). Our supreme court has recognized that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison County*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and the punishment imposed should fit the offender as well as the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

Pursuant to Tennessee Code Annotated section 40-35-103(1) (2019), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A) whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B) whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C) whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]"

And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence. *See* Tenn. Code Ann. § 40-35-103(5) (2019).

Even if a defendant is eligible for probation, the burden of establishing suitability for probation rests with the defendant. *See* Tenn. Code Ann. § 40-35-303(b). This burden also includes showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). To that end, when considering whether a defendant has met this burden, the trial court should consider "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Wilbourn*, No. W2022-01199-CCA-R3-CD, 2023 WL 4229352, at *4 (Tenn. Crim. App. June 28, 2023) (citation and internal quotation marks omitted), *no perm. app. filed.*

A trial court may sentence a defendant to a term of incarceration based solely on a need for deterrence "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *State v. Hooper*, 29 S.W.3d 1, 13 (Tenn. 2000). When denying an alternative sentence based on the seriousness of the offense "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (citations omitted). Further, when the seriousness of the offense itself is the sole reason for denying probation, "the circumstances of the offense as particularly committed in the case under consideration must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense." *Trent*, 533 S.W.3d at 292-93.

However, these "heightened" standards of review in *Hooper* and *Trotter* are inapplicable when the trial court does not base confinement solely on deterrence or solely on the seriousness of the offense. *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (citations omitted).

In the instant case, the defendant was eligible to serve her three-year sentence on probation. *See* Tenn. Code Ann. § 40-35-303(a), (c)(1) (Supp. 2020). The trial court, however, found that previous rehabilitative efforts, though successfully completed at the time, had failed to prevent or deter new criminal conduct. *See State v. Vanwinkle*, No. M2017-00812-CCA-R3-CD, 2018 WL 2383613, at *6 (Tenn. Crim. App. May 25, 2018). While considering deterrence and the seriousness of the offense, the trial relied on Mr. Bruner's and Ms. Ward's specialized knowledge and testimony regarding the increase in in retail theft within Kox County and throughout Belk Department Stores over the past three to five years as well as the impact retail theft has on both the community at large and the employees of the company—affecting their pay and even their employment. The trial court properly found that probation should be denied based upon several different considerations. As such, the trial court was not required to make further specific findings under *Trotter* or *Hooper*. *See Sihapanya*, 516 S.W.3d at 476.

Although the defendant argues that she accepted responsibility for her conduct, is gainfully employed, and has no previous probation violations, the record does not support her amenability to correction. Further, the trial court noted credibility concerns as a relevant factor in determining a defendant's potential for rehabilitation. *See Souder*, 105 S.W.3d at 608; *Bunch*, 646 S.W.2d at 160. As such, the trial court did not err by concluding that the defendant had not met her burden in establishing her suitability for full probation. *Carter*, 254 S.W.3d at 347. The defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing, we affirm the judgments of the trial court.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE

- 8 -