IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 28, 2025 Session[1]

## STATE OF TENNESSEE v. PAUL ROGERS

**Appeal from the Criminal Court for Knox County**
**No. 127721   Steven W. Sword, Judge**

_____

**No. E2024-01210-CCA-R3-CD**

_____

The Defendant, Paul Rogers, pled guilty to a nine-count information charging aggravated assault, evading arrest, and reckless endangerment, among other offenses. As part of the plea, the parties agreed that the Defendant would be sentenced to an effective term of eight years, with the trial court determining the manner of service. Following a sentencing hearing, the trial court denied the Defendant's request for an alternative sentence and imposed a sentence of full confinement. On appeal, the Defendant argues that the trial court should have granted an alternative sentence. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed; Case Remanded**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Autumn M. Bowling (on appeal) and Julie Kuykendall (at sentencing), Knoxville, Tennessee, for the appellant, Paul Rogers.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General, and Johnny Cerisano, Assistant Attorney General; Charme P. Allen, District Attorney General; and Jeannine Guzolek, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]       Oral argument in this case was heard at the Lincoln Memorial University Duncan School of Law. The panel wishes to express its gratitude to the University and our court staff for their efforts in bringing this project to fruition, as well as to both the students and attorneys who were present and participated in the session.

# OPINION

## FACTUAL BACKGROUND

On April 13, 2024, members of the Knox County Sheriff's Office observed the Defendant at a gas station in Knoxville. An officer ran the vehicle's license plate and learned that the tag was not on file. Shortly after the Defendant left the station, he rolled through a nearby stop sign. When the officer then activated his lights and sirens, the Defendant fled.

The Defendant eventually traveled onto I-75 toward Anderson County. During the pursuit, officers attempted to box the vehicle in. The Defendant intentionally pulled his truck to the right, swerved toward a pursuing cruiser at a high rate of speed, and struck the officer's patrol car. Officers terminated the pursuit shortly after the collision for safety reasons. They later located the vehicle unoccupied on I-75.

Using a K-9, officers found the Defendant a short distance away under a bridge. Officers also located a second occupant of the vehicle nearby. A search of the vehicle revealed the Defendant's identification and paperwork, a needle, and two glass smoking devices with residue. Video from the gas station confirmed that the Defendant entered the vehicle through the driver's door before driving away. At the time, the Defendant had four outstanding violation-of-probation warrants from Blount County, and his license was revoked due to a prior DUI.

### A. PLEA AND SENTENCING HEARING

On May 22, 2024, the Defendant pled guilty to a nine-count information charging aggravated assault, evading arrest, reckless endangerment, vandalism, possession of drug paraphernalia, driving on a revoked license, failure to stop, violation of the vehicle-registration law, and failure to carry a registration certificate. The plea agreement fixed the length of the sentence at eight years as a Range II, multiple offender, and allowed the Defendant to apply for probation or other alternative sentencing. The parties also agreed to stipulate to the above facts.

At the sentencing hearing, the State submitted the presentence investigation report and urged the court to order that the eight-year sentence be served in confinement. The

State emphasized the Defendant's "long history of criminal conduct," his repeated violations of probation and parole, and the seriousness of the present offense, which involved ramming an officer's vehicle. The State further argued that less restrictive measures had been frequently and recently applied without success and that confinement was necessary both to protect the public and to avoid depreciating the seriousness of the Defendant's conduct.

The Defendant emphasized his efforts toward rehabilitation and introduced reports from the Day Reporting Center and the Enhanced Probation program, both of which had accepted him. He also submitted a letter from a faith-based program in which he was currently enrolled, along with documentation showing that he had completed numerous self-improvement courses while in custody.

The Defendant further noted that many of his prior charges had been dismissed, that his substance use history contributed to his conduct, and that he had maintained legitimate employment before his arrest. He asked the court to consider placing him in a halfway house in conjunction with the Day Reporting Center program.

Finally, the Defendant made an allocution to the court. He expressed remorse, discussed his renewed faith, and stated that he "knew what [he] needed to do when [he got] out."

## B.   SENTENCE AND APPEAL

Following the hearing, the trial court denied the Defendant's request for an alternative sentence and ordered him to serve the full eight-year sentence in confinement. Before imposing the sentence, the court considered the arguments of counsel, the presentence investigation report, the principles and purposes of sentencing, and the Defendant's allocution.

The court found that the Defendant had a "long criminal history," including prior convictions for evading arrest, one of which involved creating a risk of death or serious bodily injury. It concluded that this history weighed in favor of confinement.

The court also determined that confinement was necessary to avoid depreciating the seriousness of the offense. It noted that the Defendant's conduct "created not only a risk of death or serious bodily injury to the officers but to other people in the community."

The court further observed that less restrictive measures had been "frequently and recently tried unsuccessfully," citing multiple probation and parole revocations dating back to 2016. The court acknowledged that the Defendant had "decent potential for rehabilitation" and had taken steps toward improvement. It nevertheless found that his repeated behavior made him "too big of a danger to the community" to return to supervision, and it imposed a sentence of full incarceration.

The trial court filed the judgments on July 24, 2024. The Defendant filed a timely notice of appeal twenty days later. *See* Tenn. R. App. P. 4(a).

## STANDARD OF APPELLATE REVIEW

Our supreme court has emphasized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The Defendant raises a single issue on appeal: whether the trial court erred in denying his request for an alternative sentence.

A trial court's sentencing determinations are reviewed for an abuse of discretion, accompanied by a presumption of reasonableness when the sentence falls within the applicable range and reflects a proper application of the purposes and principles of the Sentencing Act. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This same deferential standard applies to a trial court's decision to grant or deny an alternative sentence. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). As our supreme court has clarified, "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

The Defendant nevertheless asks this court to revisit *Bise* and *Caudle* and to apply a de novo standard of review under Tennessee Code Annotated section 40-35-401(d). He contends that the supreme court has impermissibly displaced the statutory de novo review. However, we have repeatedly rejected similar arguments, recognizing that *Bise* and *Caudle* remain binding precedent and that this court lacks authority to alter our supreme court's interpretations of the Sentencing Act. *See, e.g.*, *State v. Church*, No. M2014-01306-CCA-R3-CD, 2016 WL 520616, at *11-12 (Tenn. Crim. App. Feb. 10, 2016) ("Defendant effectively requests that this court overrule the decisions of our supreme court and apply a different standard than that announced in *Bise*, *Caudle*, and *Pollard*. This issue is without

- 4 -

merit."), *perm. app. denied* (Tenn. June 23, 2016).  We respectfully decline the Defendant's invitation to revisit the applicable standard of appellate review.

In this case, the Defendant received a within-range, eight-year sentence as a Range II, multiple offender, and the trial court expressly considered the purposes and principles of sentencing, the statutory factors governing alternative sentencing, and the evidence presented at the hearing.  Because the record affirmatively reflects that the trial court applied the correct legal framework and articulated its reasons for denying an alternative sentence, its decision falls within the category of sentencing determinations to which the abuse-of-discretion standard applies.

Under this standard of review, the trial court's sentencing decision is entitled to a presumption of reasonableness, and our review of the Defendant's claim is limited to determining whether the court wholly departed from the relevant statutory considerations in reaching its decision.  *See Sihapanya*, 516 S.W.3d at 476.

## ANALYSIS

The Defendant contends that the trial court erred in denying his request for an alternative sentence and ordering him to serve his eight-year sentence in confinement.  He argues that the court failed to give sufficient weight to his rehabilitative efforts, did not properly recognize him as a favorable candidate for probation, and did not adequately consider split confinement as an alternative to incarceration.

The State responds that the trial court applied the correct legal standards, considered the relevant statutory factors, and reached a reasoned conclusion based on the Defendant's criminal history, the seriousness of the present offense, and his repeated failures on supervision.  We agree with the State.

### A.   ALTERNATIVE SENTENCING GENERALLY

"Any sentence that does not involve complete confinement is an alternative sentence."  *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024).  Our supreme court has recognized that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences."  *Ray v.*

*Madison Cnty.*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and the punishment imposed should fit the offender as well as the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

Pursuant to Tennessee Code Annotated section 40-35-103(1) (2025), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

- whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

- whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

- whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]"

And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence. *See* Tenn. Code Ann. § 40-35-103(5).

Our supreme court has also recognized that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citation and internal quotation marks omitted). To that end, when considering an alternative sentence, the trial court "should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Ruiz*, 716 S.W.3d 439, 458 (Tenn. Crim. App. 2024) (citation and internal quotation marks omitted).

The record shows that the Defendant could be considered for an alternative sentence because his crimes were eligible for probation, and the trial court imposed a sentence of ten years or less for each crime. Tenn. Code Ann. § 40-35-303(a) (2025). However,

because the Defendant agreed to be sentenced as a Range II, multiple offender, the law does not consider him to be a favorable candidate for probation. *See* Tenn. Code Ann. § 40-35-102(6)(A) (2025); *State v. Arrington*, No. M2023-01368-CCA-R3-CD, 2024 WL 2797368, at *7 (Tenn. Crim. App. May 31, 2024) ("[A] defendant who agrees to be sentenced as a multiple offender waives any status as being a favorable candidate for alternative sentencing, even if the defendant would be a Range I, standard offender otherwise."), *perm. app. denied* (Tenn. Oct. 24, 2024). That said, we have recognized that

> [e]ven if the court determines that a defendant is not a favorable candidate for an alternative sentence, the court can still impose an alternative sentence on an eligible defendant if the defendant proves that he or she is a suitable candidate for the alternative sentence. Likewise, the court can sentence a favorable candidate, who is eligible for an alternative sentence, to confinement if the defendant fails to prove that he or she is a suitable candidate for an alternative sentence.

*State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *7 (Tenn. Crim. App. Sept. 13, 2024) (citation and internal quotation marks omitted), *no perm. app. filed*.

Importantly, "[t]he primary goal of probation, under the [Sentencing] Act and the decisions of the appellate courts of this state, is [the] rehabilitation of the defendant." *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996); Tenn. Code Ann. § 40-35-103(5) ("The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed."). Our legislature has also recognized that "effective rehabilitation" is often achievable only with the "voluntary cooperation of defendants." Tenn. Code Ann. § 40-35-102(3)(C).

## B. THE TRIAL COURT'S DENIAL OF ALTERNATIVE SENTENCING

In this case, the trial court ordered the Defendant to serve his sentence in the Tennessee Department of Correction. The court stated that it considered the arguments of counsel, the presentence investigation report, the Defendant's exhibits, and the statutory purposes and principles of sentencing. It then evaluated the relevant considerations identified in Tennessee Code Annotated section 40-35-103, each of which we address in turn.

The court first found that the Defendant had a "long criminal history," including multiple prior convictions for evading arrest and other offenses. *See* Tenn. Code Ann. § 40-35-103(1)(A). Although the court remarked that the Defendant's record was "not the worst" it had seen, the presentence report shows four felony convictions and eight misdemeanors in the eight years preceding the hearing. The court also emphasized the nature of these convictions—particularly the repeated instances of evading arrest, including one that created a risk of death or serious bodily injury. That conduct closely mirrored the present case, in which the Defendant intentionally steered toward a pursuing cruiser at high speed and struck a patrol car. The court reasonably viewed this pattern as evidence of the Defendant's unwillingness to comply with lawful authority and the continuing danger his conduct posed to law enforcement and the public.

The trial court also determined that less restrictive measures had been "frequently and recently tried unsuccessfully," noting multiple probation and parole violations dating back to 2016. *See* Tenn. Code Ann. § 40-35-103(1)(C). The court did not rely on the number of violations alone. It also considered their nature, observing that the Defendant committed a felony evading-arrest offense while already on probation for other convictions. The Defendant's history reflects repeated opportunities for community supervision, none of which were successful. The record supports the court's conclusion that additional community-based alternatives were unlikely to work.

In addition to these concerns, the court also considered the Defendant's potential for rehabilitation. *See* Tenn. Code Ann. § 40-35-103(5). It acknowledged his participation in a faith-based program, his acceptance into the Enhanced Probation and Day Reporting Center programs, and his completion of several classes while incarcerated. The court also noted that he had "decent potential for rehabilitation."

At the same time, it emphasized the Risk and Needs Assessment, which rated the Defendant as having a high risk of reoffending—particularly with respect to property crimes—and found that his repeated pattern of dangerous criminal conduct made him "too big of a danger to the community" to return to supervision. The court was entitled to account for the Defendant's longstanding failures on community-based sentences in assessing his rehabilitative prospects.

Finally, the trial court concluded that confinement was necessary to avoid depreciating the seriousness of the offense. *See* Tenn. Code Ann. § 40-35-103(1)(B). The Defendant's conduct during the pursuit was exceptionally dangerous. After leading officers on a multi-county chase, he intentionally steered toward a marked cruiser at high

speed and struck it. The court expressly found that this behavior "created not only a risk of death or serious bodily injury to the officers but to other people in the community." The record supports the trial court's findings.

Against this backdrop, the Defendant raises two arguments challenging the trial court's reliance on the seriousness of the offense. First, he asserts that the trial court failed to make the heightened findings required when confinement is based *solely* on the need to avoid depreciating the seriousness of the offense—namely, that the conduct was "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree," and that such circumstances outweighed all factors favoring probation. *See State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006); *see also Trent*, 533 S.W.3d at 292-93. But that heightened analysis applies only when the seriousness of the offense is the *sole* basis for denying an alternative sentence. *Sihapanya*, 516 S.W.3d at 476. Here, the trial court relied on multiple statutory considerations, including the Defendant's criminal history and his repeated failures on community supervision. *See* Tenn. Code Ann. § 40-35-103(1)(A), (C). Because the trial court's decision rested on several grounds, the heightened review standard does not apply. *See, e.g.*, *State v. Dunnivant*, No. E2023-01652-CCA-R3-CD, 2024 WL 4579325, at *6 (Tenn. Crim. App. Oct. 25, 2024), *perm. app. denied* (Tenn. Mar. 13, 2025).

Second, the Defendant argues that the trial court's remarks suggested a categorical policy of denying alternative sentences to defendants who assault police officers. A trial court may not deny probation based on its own policy views about which offenses should be eligible for alternative sentencing. The General Assembly sets sentencing policy for this state, and courts may not substitute their own sentencing preferences for those expressed in statute. *See, e.g.*, *Burdin*, 924 S.W.2d at 85; *State v. Ross*, No. E2023-00381-CCA-R3-CD, 2024 WL 2954404, at *2 (Tenn. Crim. App. June 12, 2024), *no perm. app. filed*. However, the record does not suggest that the court denied an alternative sentence based solely on the status of the victims. Rather, the court focused on the manner in which the Defendant committed the offense—dangerous conduct that posed a serious risk to officers and the public—and on his history of engaging in similar behavior. These were appropriate considerations under the Sentencing Act.

Apart from the Defendant's individual objections to the trial court's reasoning, we note his broader contention that his rehabilitative efforts and available treatment programs made him a suitable candidate for probation. That argument, however, concerns the manner in which the trial court weighed the relevant considerations and must be evaluated under the governing abuse-of-discretion standard. In reviewing a sentencing decision, we

must have "awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). We may not "second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that [we] would not have chosen." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019).

Ultimately, the trial court identified and applied the correct legal standards, considered the statutory and common-law factors relevant to alternative sentencing, and reached a reasoned conclusion based on the Defendant's record and the circumstances of the offense. As a Range II, multiple offender, the Defendant was not presumed to be a favorable candidate for probation, and the court's determination that full confinement was warranted was neither illogical nor unreasonable. In other words, the trial court did not wholly depart from the relevant statutory considerations in reaching its decision. *See Sihapanya*, 516 S.W.3d at 476. We therefore conclude that the trial court acted within its discretion in ordering a sentence of full incarceration.

## C. SPLIT CONFINEMENT AND LESS RESTRICTIVE ALTERNATIVES

The Defendant also argues that the trial court abused its discretion by failing to address whether other forms of alternative sentencing—particularly split confinement— were suitable. He contends that the court found only that full probation was inappropriate and did not explain why a partially custodial sentence could not satisfy the purposes of sentencing. The State responds that neither the Sentencing Act nor the applicable standard of review requires a trial court to evaluate and reject each statutory alternative on the record before ordering confinement. We agree with the State.

Under the Sentencing Act, a trial court must consider available alternatives when both the defendant and the offense are eligible and must place on the record the reasons supporting the sentence imposed. *See* Tenn. Code Ann. § 40-35-210(b)(3), (e)(1)(B) (2025). Beyond those requirements, however, our supreme court has never required courts to address each of the alternative sentences listed in Tennessee Code Annotated section 40-35-104(c) or to expressly reject them in sequence. Instead, the trial court satisfies its obligations when it articulates a reasoned basis for the sentence—an explanation that is sufficient for meaningful appellate review but that is not required to be "particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706 n.41; *Caudle*, 388 S.W.3d at 279.

- 10 -

Although the Defendant frames his claim as a challenge to the court's consideration of split confinement, his argument amounts to a broader suggestion that the trial court was required to demonstrate on the record why a lesser-restrictive alternative would not serve the purposes of sentencing. While the parsimony principle in Tennessee Code Annotated section 40-35-103(4) directs that a sentence be the "least severe measure necessary" to accomplish its purposes, our case law does not require a trial court to make an explicit parsimony finding or to reject each lesser sanction individually. Instead, reviewing courts infer compliance with the parsimony principle from the trial court's explanation of its sentence, rather than from any explicit rejection of each lesser alternative. *See State v. Henderson*, No. W2022-00882-CCA-R3-CD, 2023 WL 4105937, at *6 (Tenn. Crim. App. June 21, 2023), *no perm. app. filed*.

The trial court's reasoning here shows that it evaluated alternatives to full incarceration. It first acknowledged that it had taken into account the purposes and principles of sentencing and expressly identified the available options, stating that "the Court can place him on probation; the Court can order him to serve a split confinement; or the Court could order him to serve in the penitentiary." After identifying the alternatives, it explained that incarceration was necessary given the Defendant's extensive criminal history, his repeated failures on probation and parole, and the danger posed by his conduct during the offense. These findings align with the statutory considerations in section 40-35-103(1) and provide a reasoned basis for concluding that a community-based alternative—whether full probation or split confinement—would not achieve the purposes of the sentence.

To be clear, a trial court is not required to make separate findings expressly rejecting split confinement or any other sentencing alternative after sufficiently explaining the reasons for its chosen sentence. *See Bise*, 380 S.W.3d at 706 n.41; *Caudle*, 388 S.W.3d at 279. Because the record reflects both the trial court's awareness of available alternatives and a reasoned exercise of discretion, we conclude that the court acted within its discretion in imposing a sentence of full confinement.

### D.     CORRECTION OF CLERICAL ERROR IN JUDGMENT

On our own motion, we observe the presence of a clerical error in the judgment for Count 1. The record establishes that the Defendant pled guilty and was sentenced as a Range II, multiple offender, but the judgment for that count does not reflect any offender-range designation. We therefore remand Count 1 to the trial court with instructions to

correct the judgment to reflect the Defendant's offender classification as announced at sentencing.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in denying an alternative sentence to confinement.  Although we remand the judgment for Count 1 to correct a clerical error, we respectfully affirm the judgments of the trial court in all other respects.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE